972 So.2d 1252 (2007)
Javier ORELLANA
v.
LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION.
No. 2007-CA-1095.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 2007.
*1253 Mark P. Glago, Glago Law Firm, L.L.C., and Anthony D. Irpino, Irpino Law Firm, L.L.C., New Orleans, LA, for Plaintiff/Appellee.
Shawn M. Roussel, Hulse & Wanek, APLC, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR., and Judge ROLAND L. BELSOME).
DENNIS R. BAGNERIS, SR., Judge.
Defendant, Louisiana Citizens Property Insurance, appeals a judgment of the trial court, which found in favor of Plaintiff, Javier Orellana, and awarded $87,500.00 for dwelling property damages as well as $125,000 in general damages. For the following reasons, we affirm.
FACTS:
This suit arises out of the property damages suffered by Plaintiff to his duplex located at 631-33 S. Solomon Street, New Orleans, Louisiana, as a result of Hurricane. Katrina. At the time of the August 29, 2005 storm, Plaintiff had a homeowner's policy of insurance with Defendant, Corporation Citizens Property Insurance Corporation (hereinafter "Louisiana Citizens"), with policy limits of $144,000.00 for dwelling. There was no coverage for contents or loss of use.
As a result of Hurricane Katrina, Plaintiff sustained wind and rain damage to his *1254 house. In November of 2005, Plaintiff reported his claim to Louisiana Citizens. Thereafter, Louisiana Citizens sent out its adjuster, Bradford Knight, to do an inspection of the premises. Mr. Knight submitted his estimate in the amount of $48,181.84 to Louisiana Citizens on December 14, 2005; however, Louisiana Citizens did nothing and paid nothing to Plaintiff. On August 3, 2006, Plaintiff's expert, James Simpson, estimated the wind and rain damages to be $103,635.51. Mr. Simpson's estimate was submitted to Louisiana Citizens on August 16, 2006; however, Louisiana Citizens did nothing and paid nothing to Plaintiff. On March 1, 2007, Louisiana Citizens sent a new adjuster, Don May, to Plaintiff's home to do a reinspection. The re-inspection estimated the wind and rain damages to be $80,594.41; however, again, Louisiana Citizens did nothing and paid nothing.
After a one day bench trial, the trial court found in favor of Plaintiff and against Louisiana Citizens. The trial judge awarded Plaintiff $87,500.00 for dwelling property damages, plus interest and cost, as well as $125,000.00 in general damages for Plaintiff's "mental anguish, stress, and inconvenience sustained as a result of Louisiana Citizens' bad faith failure to properly and timely adjust this claim." Louisiana Citizens now appeals this final judgment.
DISCUSSION
Louisiana Citizens briefed three assignments of error arguing that; (1) the trial court erred in awarding general damages for mental anguish in contravention of La. C.C. Art.1998[1]; (2) the trial court erred in awarding general damages for mental anguish because the claim does not rise to the level necessary for an award of mental anguish damages under Louisiana jurisprudence; and (3) in the alternative, if this Court re-characterizes the general damage award as a penalty pursuant to La R.S. 22:1220, the trial court erred in failing to recognize that, pursuant to its founding legislation and the overall legislative intent thereof, Louisiana Citizens is immune from the penalty provisions of the Insurance Code.
The thrust of Louisiana Citizens' arguments goes to the issue of whether a trial court, after finding a breach of the duty to act in good faith, may award general damages sustained as a result of the breach. The trial court, in its reasons for judgment, states, in pertinent part:
Finally, the Court awards Plaintiff general damages for his mental anguish, stress, and inconvenience sustained as a result of Louisiana Citizens' bad faith to properly and timely adjust this claim. See La. R.S. Art. 22:1220(C). Mr. Orellana testified that, since he was not given any money from his insurer to repair his house, he and his mother have had to live with various friends and relatives. To this day, which is over a year and a half after the storm, they still live, in a FEMA trailer in front of the subject residence of 631-33 S. Solomon Street. *1255 Mr. Orellana testified that his two children, who are ages 13 and 25, came to stay with him in the FEMA trailer and were extremely uncomfortable. This has caused strained relations between Plaintiff and his mother, and between Plaintiff and his two children.
Further, because Plaintiff has not received any timely insurance payments, he has been forced to piece-meal his home repairs. Plaintiff has been forced to hire various independent laborers to do the repairs to his home, rather than just hiring a general contractor and have the contractor deal with the "headaches" of doing the renovation. Further, the financial burden of having to come out of pocket for his home repairs on such a limited budget has caused Plaintiff emotional strain. In fact, Plaintiff testified that the reason his home is not complete and livable is because he did not have enough money to pay the workers and they left the jobsite. The Court finds Plaintiff's testimony regarding his emotional distress to be very credible. Had Louisiana Citizens actions not been so arbitrary and capricious in their failure to pay Plaintiff's claim in a timely manner, Plaintiff could have rebuilt his house in a timely manner and the strained relationships Plaintiff has had to endure with his family and the emotional distress described herein could have been avoided. Accordingly, the Court awards Plaintiff $125,000 in general damages. See National Union Fire Insurance Company of Louisiana v. Harrington, 2002-832 (La.App. 3 Cir.2003), 854 So.2d 880.
La. R.S. 22:1220. Good faith duty; claims settlement practices; cause of action; penalties, states, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the *1256 insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings. (emphasis added)
La. R.S. 22:1220 clearly states that an insurance company may be assessed general and special damages for breach of the imposed duty, and may be assessed penalties in addition. In this case, the trial court made a finding that Louisiana Citizens acted in bad faith for its failure to properly and timely adjust Plaintiffs claim. We find no error in this finding, especially in light of the fact that findings of fact of the trial court are given great weight and are only overturned if manifestly erroneous or clearly wrong. See Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Further, this Court, in Blache v. Jones addressed the issue of whether a homeowner can recover for mental anguish caused by property damage. Specifically, this Court stated:
In Louisiana, an award for mental anguish resulting from property damage is permissible in limited situations: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result. First of Georgia Insurance Co. v. Cohen, 398 So.2d 1209 (La.App. 4th Cir.1981); Turgeau v. Pan American World Airways, 764 F.2d 1084 (5th Cir. 1985).
Blache v. Jones, 521 So.2d 530, 531 (La. App. 4 Cir. 2/10/88).
In this case, Plaintiff has had to watch his home sustain ongoing damage[2] as a result of Louisiana Citizens' decision to not pay timely insurance payments, which qualifies the case under subsection (1). Had Louisiana Citizens actions not been so arbitrary and capricious in its failure to pay Plaintiff's claim, Plaintiff could have prevented further deterioration of the home and/or allowed Plaintiff the opportunity to properly rebuild. The trial court observed the testimony of the Plaintiff and found that the Plaintiff was very credible. We find nothing in the record to indicate that the award of $125,000.00 was beyond the "great, even vast" discretion of a trier of fact in fixing such a damage award. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Although Louisiana Citizens argues that it is immune from the ramifications of La. R.S. 22:1220, we find no merit in this assignment of error. We have been unable to find any statute that gives immunity to Louisiana Citizens from being assessed damages pursuant to La. R.S. 22:1220. For these reasons, we affirm the judgment of the trial court, which awarded Plaintiff $87,500.00 for dwelling property damages as well as the general damage award for $125,000.00.
AFFIRMED.
LOVE, J., Concurs in Part and Dissents in Part and Assigns Reasons.
CANNIZZARO, J., Dissents and Assigns Reasons.
LOVE, J., concurring in part and dissenting in part.
I respectfully dissent in that I do not find that general damages were properly *1257 awarded. I concur with the majority that Louisiana Citizens Property Insurance Corporation (LCPIC) is not immune from penalties and its actions are compensable as such pursuant to La. R.S. 22:1220.
I find the majority's reliance on Blache v. Jones, 521 So.2d 530 (La.App. 4th Cir. 1988), distinguishable and inapplicable to the case sub judice. Blache addresses mental anguish claims available from delictual based actions on property damage as opposed to damages regarding contractual matters.
"Laws on the same subject matter must be interpreted in reference to each other." La. C.C. art. 13. Two laws in Louisiana pertain to damages for nonpecuniary losses. The Louisiana Insurance Code section on unfair trade practices contains La. R.S. 22:1220, which provides that "[a]ny insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." La. R.S. 22:1220. Further, the statute affords that an insurer who breaches his duty to an insured is required to pay "any general or special damages to which a claimant is entitled." La. R.S. 22:1220. In conjunction, the Louisiana Civil Code's section on conventional obligations or contracts contains a specific provision regarding the award of damages for nonpecuniary losses resulting from a breach of contract. If the contract breached is not "intended to gratify a nonpecuniary interest," damages for nonpecuniary losses "may be recovered . . . when the obligor intended, through his failure, to aggrieve the feelings of the obligee." La. C.C. art.1998.
An insurance policy is a contract. La. C.C. art.1906. The object of an insurance contract is the payment of money. Dixon v. First Premium Ins. Group, 05-0988, p. 16 (La.App. 1 Cir. 3/29/06), 934 So.2d 134, 146 While La. R.S. 22:1220 permits the award of special damages, La. C.C. art. 1998 specifically limits remuneration to nonpecuniary losses resulting from contracts for nonpecuniary interests. The majority opinion addresses Mr. Orellana alleged damages, but lacks evidence of the LCPIC's actions that would demonstrate the intent to intentionally aggrieve Mr. Orellana, as required by La. C.C. art.1998.
La. R.S. 22:1220 permits the award of penalties "assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La. R.S. 22:1220. La. R.S. 22:1430.5 provides the LCPIC with partial immunity from liability. However, the statute does not specifically protect the LCPIC from an assessment of penalties. The legislature demonstrated a direct intent to exclude the Insurance Guaranty Association Fund ("IGAF") from liability for general and special damages. See La. R.S. 22:1220. While La. R.S. 22:1430.5 grants immunity to the Louisiana Insurance Rating Commission, its staff, the LCPIC's governing board, etc., the statute does not grant immunity from penalties directly to the LCPIC or the Louisiana Citizens Fair Plan or express the legislature's intent to do so.
I find that the LCPIC failed to tender any amount to Mr. Orellana more than sixteen months after he reported the wind and rain damage claim from Hurricane Katrina. The LCPIC sent two adjusters to estimate Mr. Orellana's damages sixteen months apart with estimates at $48,181.84 and $80,594.41 respectively. Mr. Orellana's adjuster estimated his damages at $103,635.51 almost a year after Hurricane Katrina. Accordingly, $48,181.84 of damage to Mr. Orellana's *1258 home was undisputed. Also, the LCPIC never denied Mr. Orellana's policy covered the alleged damages and Mr. Orellana repeatedly requested payment. The LCPIC could not provide an explanation as to why Mr. Orellana claim was not addressed properly.
I find that the trial court was correct in its factual finding that the LCPIC acted arbitrary and capricious as required for a penalty award. Therefore, pursuant to the de novo standard of review used for reviewing questions of law, like, the awarding of penalties as per La. R.S. 22:1220, I would award $175,000 in penalties.
CANNIZZARO, J., dissenting.
I respectfully dissent from the majority's award of $125,000.00 to the plaintiff, Javier Orellana.
The defendant, Louisiana Citizens Property Insurance Corporation ("LCPIC"), contends the trial court erred in awarding to Mr. Orellana $125,000.00 in damages for mental anguish, stress and inconvenience. LCPIC maintains that because Mr. Orellana's claims were based on an alleged breach of an insurance contract, his damages are limited to pecuniary losses flowing from the breach.
As a threshold matter, while it is undisputed the trial judge compensated Mr. Orellana for his nonpecuniary damages, LCPIC maintains the statutory basis for the award is somewhat vague. It notes that, while the trial judge characterized the award as "general damages" on several occasions, he cited to paragraph (C) of La. R.S. 22:1220, which LCPIC claims is applicable to the imposition of penalties. LCPIC recognizes Mr. Orellana concedes in brief that the award is for general damages. Notwithstanding, facing the remote possibility it could be faced with the imposition of penalties, LCPIC argues out of an abundance of caution that it is indistinguishable whether the award represents general damages or penalties. In any event, I conclude relief under either case to be inappropriate under the facts. When considering La. R.S. 22:1220 in its entirety, the statute imposes the affirmative duty on an insurer to adjust claims fairly and promptly and to make a reasonable effort to settle claims. The provision grants a cause of action to an insured or claimant against an insurer who breaches the statutorily prescribed duties, as well as provides for the award of special, general and punitive damages.[1]

General and Nonpecaniary Damages
"General damages are those which may not be fixed with pecuniary exactitude; instead, they `involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 808, 809, citing Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2 Cir.1993).
As stated, La. R.S. 22:1220 grants the cause of action for general damages for breach of an insurance contract. However, La. C.C. art.1998 dictates the limited circumstances nonpecuniary damages are awardable for breach of contract. La. C.C. art.1998 states:
Damages for nonpecuniary loss may be recovered when the contract, because *1259 of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
It is clear each paragraph of the Civil Code article provides a separate vehicle for nonpecuniary relief.
Applying La. C.C. art.1998, Mr. Orellana is barred recovery under the first paragraph. It is well settled in Louisiana law that the object of a contract of insurance is the payment of money. Bye v. American Income Life Ins. Co., 316 So.2d 164 (La. App. 4 Cir.1975). By virtue of the nature of the contract at issue in these proceedings, the basis of its formation was not to foster a nonpecuniary interest. Rather, it was for the payment of money to protect physical property against an insurable risk. Mr. Orellana has not presented evidence to suggest otherwise.
Additionally, recovery for general damages is barred under the second paragraph of La. C.C. art.1998. Although the nature of the contract is irrelevant, Mr. Orellana still had to sustain the burden of proving LCPIC intended to aggrieve his feelings. The record is absent any evidence LCPIC knowingly and intentionally sought to aggrieve or cause distress of any nature to Mr. Orellana's feelings. LCPIC's behavior, while characterized as "arbitrary and capricious," did not equate with "intentional" misconduct. La. R.S. 22:1220 does not define "arbitrary" or "capricious". Similarly, La. C.C. art.1998 does not define "intentional". As such, I rely on Black's Law Dictionary, 8th Edition (1999), which defines "arbitrary" as ". . . [d]epending on individual discretion . . . It defines "capricious" as ". . . characterized by or guided by unpredictable or impulsive behavior." In vast contrast, Black's defines "intention" as "[t]he willingness to bring about something planned or foreseen; the state of being set to do something  intentional, adj." The state of mind for "arbitrary and capricious" behavior is seemingly based on whim, rather than reason or forethought as with intentional misconduct. Therefore, I conclude damages for nonpecuniary loss are not recoverable under La. C.C. art.1998 and, as such, not compensable under La. R.S. 22:1220(A).
Nor I do not find merit in the majority's reliance on Blanche v. Jones, 521 So.2d 530 (La.App. 4 Cir.1088). Both this case and Blanche address the issue of nonpecuniary damages. However, Blanche did not involve recovery under La. R.S. 22:1220 or La. C.C. art.1998. Unlike the instant contractual premised claim, Blanche involved a delictual based action arising out of criminal damage to property. Specifically, the plaintiffs' home was intentionally set on fire while they were present. They instituted a tort action seeking nonpecuniary damages against the parents of the minor arsonists alleging the intentional and/or illegal conduct resulted in measurable psychic trauma. The appellate court reversed the trial court finding mental anguish occasioned by property damage is compensable when the defendant's actions are intentional or illegal. The majority undoubtedly relies on Blanche for this legal proposition.
Over two years after this court's decision in Blanche, the Louisiana Supreme *1260 Court articulated, in Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d. 1081 (La.1990), the elements necessary for recovery for intentional infliction of mental distress: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. [citing to Restatement of Torts (2d) § 46(1)]." The jurisprudence is clear that the mental anguish must be a real mental injury, illness or other physical consequence. If a defendant's conduct is merely negligent and causes only mental disturbance, absent accompanying physical injury, then the defendant is not liable for emotional distress. Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d at 1095, citing Prosser & Keeton § 54 at 361; Restatement of Torts (2d) § 436A. While the Louisiana Supreme Court in Moresi noted that there have been numerous deviations from the general rule for mental injury damages, it further qualified that each of those cases ". . . have in common the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. [cites omitted]."[2]
Applying these principles, I do not find LCPIC should be held liable for mental distress under the facts. Although its actions were arbitrary and capricious, they were not intentional or outrageous. Further, I do not doubt Mr. Orellana suffers from the same worry and inconvenience the other innumerable victims of Hurricanes Katrina and Rita are suffering from over the consequences to their property. However, with the exception of his own testimony, Mr. Orellana did not present any evidence that he suffered measurable and severe psychic trauma and/or injury to justify such an award under these circumstances. For instance, in Blanche, the plaintiffs presented evidence of medical treatment for mental health conditions precipitated by the criminal damage to their home.
Moreover, I do not find the instant contract case to be the type of case envisioned by the courts in Moresi and Blanche to warrant mental anguish recovery. Moresi and Blanche were both delictual *1261 cases relying on general principles of tort law to sustain a cause of action for nonpecuniary damages. Neither court cited to statutory support for mental anguish recovery and, rather, relied exclusively on jurisprudence. In contrast, the Louisiana Legislature specifically enacted La. R.S. 22:1220 and La. C.C. art.1998 to address recovery for nonpecuniary damages stemming from an insurer's misconduct in the handling of an insurance claim. Mr. Orellana was unable to sustain his burden under these statutory provisions. As such, general damages are not awardable under the facts.
Penalties
The law of Louisiana is clear insofar as it provides that an insured or claimant cannot recover penalties for failure to settle a claim, except in the limited circumstances provided by statute. While La. R.S. 22:1220(C) states penalties may be awarded in the event an insurer is found to have acted arbitrary and capricious, I conclude that LCPIC is immune from the imposition of penalties pursuant to La. R.S. 22:1430, et. seq., entitled "Louisiana Citizens Property Insurance Corporation." This section of the Louisiana Insurance Code sets forth the statutory provisions relative to the purpose, derivation and operation of LCPIC. Specifically, La. R.S. 22:1430.5, captioned "Immunity from liability," states:
A. There shall be no liability on the part of and no cause of action of any nature shall arise against the Louisiana Insurance Rating Commission or any of its staff, or against the governing board of the Louisiana Citizens Property Insurance Corporation or anyone acting on behalf of the corporation or the plans, or against any servicing carrier or carriers, or against any assessable insurer, or against any participating insurance producer, or against the Department of Insurance or its representatives, for any action taken by them in the performance of their duties or responsibilities under this Subpart.

B. Such immunity from liability does not apply to:
(1) Any of the persons or entities listed in Subsection A hereof for any willful tort or criminal act.
(2) The corporation, or insurance producers placing business with one of the plans, for breach of any contract or agreement pertaining to insurance coverage.
(3) The corporation with respect to issuance or payment of debt.
(4) Any assessable insurer with respect to any action to enforce such insurer's obligations to the corporation under this Subpart.
[Emphasis added.]
Paragraph (A) clearly provides the exemption from liability applies to, among others, LCPIC and anyone acting on its behalf during the performance of their duties or responsibilities. Paragraph (B) sets forth the exceptions to the grant of immunity. This paragraph is not the most artfully of drafted provisions by the Louisiana Legislature and, as such, the exceptions are difficult to discern. Notwithstanding, LCPIC correctly asserts the entirety of La. R.S. 22:1430(5) would be rendered meaningless if there was not an exception from the grant of immunity for the underlying cause of action subject of Mr. Orellana's contractual insurance claim (i.e., property damage claim). To state otherwise; the. LCPIC would never be required *1262 to pay an insured for a damage claim.
In stark contrast, overriding public policy dictates the Louisiana Legislature did not intend to have an exception from the grant of immunity for the assessment of penalties. See, Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360 (La.21/03/03), 860 So.2d 1112 ("Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the Legislature in enacting the statute . . . The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the Legislature to enact the law. [Cites omitted; emphasis added] )." The first provision in the Insurance Code relative to LCPIC is La. R.S. 22:1430, which articulates LCPTC's "declaration and purpose; [and] construction." It expressly states the Legislature created the nonprofit corporation, among other reasons, to meet the public responsibility of providing homeowner's property coverage for those unable to procure such following Hurricane Katrina. In furtherance of its mission, the Legislature declared in its purpose statement that ". . . it is essential for the corporation to have maximum financial resources to pay claims following a catastrophic hurricane . . . " [Emphasis added.]. However, LCPIC is not an insurance carrier operating in the traditional insurance and investment market. Rather, it operates in a statutory imposed residual market, involuntarily subsidized by every Louisiana licensed insurer writing residential and commercial property insurance. La. R.S. 22:1430. Therefore, the Legislature imposed measures to protect LCPIC's monetary resources and financial independence. For instance, it expressly exempted LCPIC and the interest on its debt obligations from federal income taxation, as well as mandated it take all action to maintain its tax-free status. La. R.S. 22:1430 and 22:1430.5. Further, LCPIC is barred from declaring liquidation or bankruptcy and was ordered to retain any profits or excess reserves so as to offset any deficit incurred in the operation of the plan. La. R.S. 22:1430.6(E); La., R.S. 22:1430.20; and La. R.S. 22:1430(D)(4). Based on such, the imposition of penalties, on each occasion up to two times the amount of the policy, would undoubtedly be in direct contravention of the Legislature's expressed declaration to protect LCPIC's financial resources.
Finally, as stated, La. R.S.22:1220(C) is a penalty provision allowing for the punishment of an insurance carrier for arbitrary and capricious behavior. Generally, the penal nature of the monetary assessment is to discourage certain types of misconduct by an insurer. Sultana. Corp. v. Jewelers Mut. Ins. Co., 860 So.2d at 1118. However, there would be no deterrent affect with the assessment of penalties against LCPIC, a nonprofit corporation. Rather, the penalty would result in a direct assessment and surcharge on all the insurance carriers operating in the state of Louisiana. These insurers would, in turn, impose a surcharge premium against its Louisiana policyholders to cover its deficit. Since LCPIC is indirectly financed by Louisiana citizens, they would ultimately suffer the long term effects of the assessment of penalties through their insurance premium increases. While I recognize the validity of the majority's argument relative to the imposition of penalties, I find the overriding costs to be objectionable. In these unique times in history, Louisiana citizens can not be burdened with the excessive expense of bailing out LCPIC or any other entity created with the intention of providing assistance in the State's recovery *1263 from Hurricane Katrina and Hurricane Rita. Clearly, such a result would thwart the public purposes propounded by the Legislature in the creation of LCPIC in providing economic stability and orderly growth and development to Louisiana and, particularly, the coastal area. See, La. R.S. 22:1430.
For these reasons, I Conclude the majority's award of $125,000.00 is inappropriate under the facts.
NOTES
[1] La. C.C. Art.1998. Damages for nonpecuniary loss.

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
[2] In 2005, Louisiana Citizens' adjuster estimated the damage to be $48,181.84; however, in 2007, Louisiana Citizens' adjuster estimated the damage to be $80,594.41.
[1] LCPIC does not contest on appeal the trial court's special damage award for the repairs to Mr. Orellana's property.
[2] In Moresi, the court listed the several occasions where mental anguish damages were awarded:

A number of courts have allowed recovery against a telegraph company for the negligent transmission of a message, especially one announcing death, indicating on its face a potential for mental distress. E.g., Graham v. Western Union, 109 La. 1069, 34 So. 91 (1903). Some others have allowed similar recovery for the mishandling of corpses, See French v. Ochsner Clinic, 200 So.2d 371 (La.App. 4th Cir.1967); Blanchard v. Brawley, 75 So.2d 891 (La.App. 1st Cir.1954); Morgan v. Richmond, 336 So.2d 342 (La.App. 1st Cir.1976); Shelmire v. Linton, 343 So.2d 301 (La.App. 1st Cir.1977); failure to install, maintain or repair consumer products, Pike v. Stephens Imports, Inc., 448 So.2d 738 (La.App. 4th Cir.1984); failure to take photographs or develop film, Grather v. Tipery Studios, Inc., 334 So.2d 758 (La.App. 4th Cir.1976); negligent damage to one's property while the plaintiffs were present and saw their property damaged, Holmes v. Le Cour Corp., 99 So.2d 467 (Orl.La.App.1958); Lambert v. Allstate Insurance Co., 195 So.2d 698 (La.App. 1st Cir.1967); and in cases allowing damages for fright or nervous shock, where the plaintiff was actually in great fear for his personal safety. Pecoraro v. Kopanica, 173 So. 203 (Orl.La.App.1937); Klein v. Medical Building Realty Co., Inc., 147 So. 122 (Orl.La.App.1933); Laird v. Natchitoches Oil Mill, Inc., 10 La.App. 191, 120 So. 692 (2d Cir.1929); Cooper v. Christensen, 212 So.2d 154 (La.App. 4th Cir.1968). 567 So.2d at 1096.