985 So.2d 1275 (2008)
Danny VEADE, Husband of/and Gwen Veade
v.
LOUISIANA CITIZENS PROPERTY CORPORATION d/b/a Louisiana Citizens Coastal Plan.
No. 2008-CA-0251.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 2008.
*1277 John H. Denenea, Jr., Brian G. Shearman, Shearman-Denenea, L.L.C., New Orleans, LA, and Jack E. Morris, Jack E. Morris, Attorney at Law, Metairie, LA, for Danny Veade, Husband of/and Gwen Veade.
Gregory J. McDonald, Hugh Glenn, Bienvenu, Foster, Ryan & O'Bannon, LLC, New Orleans, LA, for Louisiana Citizens Property Insurance Corporation.
Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME.
LOVE, Judge.
Danny and Gwen Veade's second home, located in the Lake Catherine area of New Orleans, was completely destroyed during Hurricane Katrina. Their insurer alleged that all of the damage was caused by water. However, the insurer tendered $43,687.70 for wind damage to the roof and other non-structural components. Danny and Gwen Veade filed suit. The trial court ordered the insurer to pay the policy limits, as well as imposed penalties and awarded general damages. We find that the trial court did not err in imposing liability on the insurer or imposing penalties and affirm. We also find that the trial court did not err in awarding damages for mental anguish and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On August 29, 2005, Danny ("Mr. Veade") and Gwen ("Mrs. Veade") Veade's (collectively "Veades") second home, located in the Lake Catherine area of New Orleans, was completely destroyed by Hurricane Katrina ("Katrina"). The Veades' property was insured with a homeowner's policy issued by the Louisiana Citizens Property Insurance Corporation ("LCPIC") with a dwelling limit of $100,000 and a personal property limit of $5,000.
On September 6, 2005, the Veades notified LCPIC of their loss. Their claim was assigned to AIG Central Claims Services ("AIG").[1] David Black ("Mr. Black") of AIG inspected the Veades' property on October 19, 2005, and informed the Veades that the damage to the dwelling was $100,000 and damage to personal property was $23,816.15. Mrs. Veade made repeated telephone calls to LCPIC. Mr. Black advised that he had submitted the *1278 completed paperwork. The Veades were then denied,[2] as LCPIC stated that the file was not complete and the claim was being reassigned. Frustrated with the process, Mrs. Veade stopped trying to contact the LCPIC and Mr. Veade began handling the claim.
LCPIC's claim file on the Veades' contained an entry on December 23, 2005, that the previous report was not complete and the file was reassigned to Hammerman and Gainer International, Incorporated ("H & G"). Mr. Veade then filed a complaint with the Louisiana Department of Insurance ("LDOI"). LCPIC issued a response to the LDOI that the initial field adjuster never submitted a report. H & G issued a report, following inspection, that no damage from wind was present at the Veades' property. The Veades then received a denial letter from LCPIC.
In March 2006, LCPIC stated that they owed the Veades for the roof replacement and ordered H & G to prepare an estimate. H & G sent its second report to LCPIC in May, which estimated the cash value of "damage from roof down to ceiling drywall" at $43,134.69. Subsequently, LCPIC hired Rimkus Consulting Group, Incorporated of Louisiana ("Rimkus"), an engineering firm, to issue a report on the Veades' property. The Rimkus report included estimated wind damage, minus the deductible, at $43,687.70. LCPIC did not tender any portion of their policy limits.
The Veades filed a petition for damages against LCPIC in July 2006, alleging that their property was destroyed due to high and/or tornadic winds, that LCPIC was arbitrary and capricious to refuse payment, and was acting in bad faith. The Veades also requested the payment of attorney fees. LCPIC filed an exception of lis pendens due to several pending Katrina related class certifications. The LCPIC then had the exception dismissed as moot because the Veades opted out of future class certifications. Then, in December 2006, LCPIC tendered a check for $43,687.70 to the Veades for wind damage assessed by Rimkus and H & G.
The trial court ordered LCPIC to pay the Veades $105,000, the policy limits, minus the deductible, recovery depreciation, and/or the unconditional tender. The trial court also ordered LCPIC to pay attorney's fees "as special damages pursuant to La.R.S. 22:1220, in an amount of 25% of the amount awarded to plaintiffs herein." LCPIC was also assessed all costs and legal interest from the date of demand. Both parties filed motions for a partial new trial,[3] which the trial court granted. The trial court amended its judgment to award the Veades $10,000 each for general damages and $10,000 in penalties pursuant to La. R.S. 22:1220(C). LCPIC filed a suspensive appeal and the Veades answered the appeal.

CAUSATION
Appellate courts review conclusions of the factfinder using the manifest error or clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A two-prong test exists for overturning the factfinder's decisions, which includes: 1) finding the trial court's rulings have no reasonable factual basis and 2) the record indicates that the trial court's findings are wrong (manifestly erroneous). Mart v. Hill, 505 *1279 So.2d 1120, 1127 (La.1987). The appellate court must look for reasonable interpretations based on the record. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The trial court has the ability to better weigh witness credibility. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). If "two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, 617 So.2d at 883.
LCPIC asserts that the trial court committed manifest error in finding that it had not met its burden of proof as to the cause of the Veades' damages. LCPIC must prove that exclusions, such as waves and storm surge, caused most of the damage to the Veades' property. La. R.S. 22:658.2.
During the two-day trial, both Mr. and Mrs. Veade testified, as well as the Veades' expert, and a corporate representative for LCPIC. Mr. Veade testified that the property was elevated nine and a half to nine and three-quarters feet above the ground. When he visited the property, only pilings remained. He further stated that he made a flood claim for the garage, steps, and patio that were located below the first level of the property.
Leonard C. Quick ("Mr. Quick"), the Veades' expert in civil engineering, forensic engineering, and storm damage analysis, testified that a tornado destroyed the Veades' property. Mr. Quick conducted over 2,700 claims inspections after Hurricanes Katrina, Rita, and Wilma and had also testified as an expert numerous times prior to Katrina. He stated that the "multi directional depositing" of the pier foundation members documented that the structure blew apart. He also testified that the anchor bolts were bent outward. He further stated that flood waters did not reach the living floor of the property. Additionally, Mr. Quick stated that the Old Glory property near the Veades' property was also damaged by winds. Mr. Quick testified that tornados create an extreme pressure differential and that high winds and/or a tornado arrived prior to the peak storm surge.
Nash Roberts ("Mr. Roberts"), LCPIC's expert in meteorology, testified that there was about a twelve-foot storm surge in Lake Catherine. He stated that nothing was present to block the storm surge or waves before striking the Veades' property. Disagreeing with Mr. Quick, Mr. Roberts testified that the high water mark was between sixteen and seventeen feet with seven to eight foot seas. Mr. Roberts further stated that there was no meteorological evidence of tornados and that he does not think any tornados were formed. However, on cross-examination, Mr. Roberts testified that the high winds reached the Veades' property prior to the waves and storm surge.
William Worsham ("Mr. Worsham"), LCPIC's expert in civil engineering with a sub-specialty in coastal engineering, stated that he had no insurance related experience prior to Katrina. Contrary to Mr. Quick's testimony, Mr. Worsham testified that he did not see any evidence of tornadic activity in the Lake Catherine area and stated that Old Glory collapsed from below due to water. While he agreed with Mr. Quick's conclusion that the Veades' property was elevated about nine and a half feet above ground, he believed that the living area was impacted by waves. Mr. Worsham testified that he would not expect to see structural damage as a result of the winds exhibited in the Lake Catherine area. He concluded that there was ample water and waves to destroy the Veades' property completely. However, damage to the shingles, siding, fascia, and other non-structural elements could have been *1280 caused by the wind. Mr. Worsham testified that there was no reason to believe that the location of the piers indicated tornadic activity.
On cross-examination, Mr. Worsham revealed that he did not inspect the property, but instead based his report from a view of the Veades' property from the highway. He did not request or review information regarding the pre-Katrina condition of the Veades' property. Further, Mr. Worsham stated, like Mr. Roberts, that the peak winds affected the Veades' property prior to the peak storm surge. Mr. Worsham then stated that he was unsure whether the Veades' property was completely knocked down after the peak winds. Lastly, he reiterated that the Veades' property was destroyed progressively by water and waves instead of instantaneously by winds.
The trial court has the ability to weigh witness credibility and credentials. Mr. Quick is an experienced forensic engineer who had conducted many Katrina related claim inspections. Mr. Worsham had never testified as an expert prior to the case sub judice and had no pre-Katrina insurance related experience. LCPIC contends that Mr. Quick's testimony is unreliable because he used different data than that of Mr. Roberts. However, given the two opposing theories as to the destruction of the Veades' property presented by the experts for the Veades and LCPIC, we do not find that the trial court committed manifest error in holding that LCPIC failed to carry its burden of proof that the Veades' property was destroyed by storm surge and waves.
We affirm the trial court's award of the Veades' policy limits.

MENTAL ANGUISH
LCPIC alleges that mental anguish damages are not recoverable under La. R.S. 22:1220 for a breach of contract claim. The trial court awarded Mr. and Mrs. Veade $10,000 each for general damages arising from mental anguish regarding their delayed claim with LCPIC. As referenced above, La. R.S. 22:1220 states that an insurer that breaches the duty in the statute will be liable for "any damages sustained as a result of the breach."

Availability
This Court held that damages can be recovered for mental anguish if an insurer breaches its duty of good faith. Orellana v. La. Citizens Prop. Ins. Corp., 07-1095, pp. 5-6 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252, 1256. However, La. C.C. art. 1998 provides that if the contract breached is not "intended to gratify a nonpencuniary interest," damages for non-pecuniary losses "may be recovered ... when the obligor intended, through his failure, to aggrieve the feelings of the obligee." "Laws on the same subject matter must be interpreted in reference to each other." La. C.C. art. 13.
The payment of money is the object of an insurance contract. Bye v. Am. Income Life Ins. Co., 316 So.2d 164 (La.App. 4th Cir.1975). La. R.S. 22:1220 permits the award of damages; however, La. C.C. art. 1998 limits the remuneration to nonpecuniary losses as a result from contracts for nonpencuniary interests. Thus, in order to recover for mental anguish, there must be evidence of the breach by the insurer and the intent to aggrieve the plaintiff.
The record in Orellana was devoid of evidence documenting the intent of LCPIC to aggrieve the plaintiff.[4] Likewise, the *1281 proffered evidence in Sher v. Lafayette Ins. Co., 07-2441, 07-2443, p. 13 (La.4/8/08), ___ So.2d ___, ___, 2008 WL 928486, did not provide proof that the insurer intended to aggrieve the plaintiff. Therefore, mental anguish damages were not available.
However, in the case sub judice, the record contains evidence of LCPIC's intent to distress the Veades. Patrick Elza ("Mr. Elza"), the corporate representative for LCPIC for the Veades' claim, testified that the Veades' property was classified as a total loss of $123,316.15 by Mr. Black. The Veades' repeatedly contacted LCPIC, but were told that Mr. Black never submitted a report. Mr. Elza stated that LCPIC then believed that the report was incomplete because it did not contain a detailed description of the house that was once on the property and separation of wind versus flood damage. Instead of asking Mr. Black to complete the claim, LCPIC assigned the Veades' claim to another adjuster, H & G, at a time when adjusters were difficult to obtain.
Mr. Elza admitted that LCPIC misrepresented the status of the Veades' claim because Mr. Black did in fact submit a report. However, the claim file states that "[t]he OIA[5] did not write a report." Mr. Veade filed a complaint with the LDOI. LCPIC also lied to LDOI by misrepresenting the status of the Veades' claim because LCPIC told LDOI: "[t]he initial field adjuster never submitted a report after inspecting the insured's property." Mr. Veade testified that H & G would not return his calls after H & G informed him that it was waiting on LCPIC to tell them how to write up the Veades' claim. LCPIC failed to pay the Veades for their undisputed losses for months after H & G and Rimkus finalized their reports.
LCPIC was aware, according to the Veades' claim file, that Mrs. Veade was in counseling as a result of attempting to settle the insurance matter with LCPIC. After Mrs. Veade became too frustrated and upset with the process, Mr. Veade began handling the claim. Additionally, Mrs. Veade testified that Mr. Veade had to talk to a friend, who is a stress therapist, as a result of LCPIC's behavior.
The record reveals the intent to delay payment of undisputed covered losses as well as disputed to the Veades and an attempt to decrease liability by hiring H & G as the second adjuster. Furthermore, LCPIC's claim file also contained information regarding the Veades' stress from the claim process. Given the facts contained in the record, we do not find that the trial court erred in determining that the Veades were entitled to general damages as a result of LCPIC's bad faith behavior.

Amount of General Damages
The factfinder is granted wide latitude when awarding damages. Overton, 05-1001, p. 21, 937 So.2d at 417. Damages awarded by the trial court are not altered unless an abuse of discretion is shown. Id.
The Veades' cross-appeal also seeks to increase the amount the trial court awarded for general damages, which was for mental anguish. The Veades' live in Jefferson Parish, while the Lake Catherine property was a second home. Additionally, unlike Orellana, the Veades' property was completely destroyed. They did not *1282 watch a structure crumble as a result of LCPIC's actions. Accordingly, we do not find that the trial court abused its discretion in awarding the Veades $10,000 each for general damages.

PENALTIES
The trial court's legal findings are reviewed under the de novo standard. Overton v. Shell Oil Co., 05-1001, p. 8 (La.App. 4 Cir. 7/19/06), 937 So.2d 404, 410. "A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial." Banks v. New Orleans Police Dep't, 01-0859, p. 3 (La.App. 4 Cir. 9/25/02), 829 So.2d 511, 514.
LCPIC avers that it is not subject to penalties pursuant to La. R.S. 22:1220. The trial court assessed a $10,000 penalty against LCPIC pursuant to La. R.S. 22:1220, which states, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
...
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
...
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
LCPIC states that it was granted limited immunity by La. R.S. 22:1430.5, which reads:
A. There shall be no liability on the part of and no cause of action of any nature shall arise against the commissioner of insurance, or against the governing board of the Louisiana Citizens Property Insurance Corporation or anyone acting on behalf of the corporation or the plans, or against any servicing carrier or carriers, or against any assessable insurer, or against any participating insurance producer, or against the Department of Insurance or its representatives, for any action taken by them in the performance of their duties or responsibilities under this Subpart.
B. Such immunity from liability does not apply to:
(1) Any of the persons or entities listed in Subsection A hereof for any willful tort or criminal act.
(2) The corporation, or insurance producers placing business with one of the plans, for breach of any contract or agreement pertaining to insurance coverage.
(3) The corporation with respect to issuance or payment of debt.

*1283 (4) Any assessable insurer with respect to any action to enforce such insurer's obligations to the corporation under this Subpart.

Immunity
This Court has held that LCPIC is not immune from penalties pursuant to La. R.S. 22:658. Reed v. La. Citizens Prop. Ins. Corp., 07-1592, p. 2 (La.App. 4 Cir. 3/5/08), 980 So.2d 754, 756. In Orellana, this Court also found that LCPIC was subject to special damages in Orellana, 07-1095, p. 4, 972 So.2d at 1256. Like this Court's reasoning in Reed, we have found no wording or statute that specifically exempts LCPIC from penalties pursuant to La. R.S. 22:1220. However, as seen in the excerpt above, the Louisiana Insurance Guaranty Association Fund is specifically exempt. Therefore, we do not find that the trial court erred in finding that LCPIC is not immune from penalties.

Amount of Penalties
The Veades cross-appealed in an attempt to increase the amount of penalties. The trial court is awarded great discretion when determining the amount of special damages. Given the facts regarding LCPIC's actions of bad faith and intent as discussed pertaining to mental anguish, we do not find that the trial court abused its discretion in awarding $10,000 in penalties and affirm.

DECREE
For the above mentioned reasons, we find that the trial court did not err in holding that LCPIC failed to meet its burden of proof as to the causation of the Veades' damages. LCPIC is not immune to penalties and the trial court did not abuse its discretion in awarding the penalties. Further, we find that mental anguish damages are available due to the intentional conduct of LCPIC. Lastly, we find that the trial court did not abuse its discretion in the amount of general damages and affirm.
AFFIRMED.
BELSOME, J., dissents in part.
BELSOME, J., dissents in part.
While I join in the majority's opinion with respect to affirming the trial court's finding of liability on the insurer, because this record presents a pattern of indefensible misrepresentations and intentional acts of bad faith on the part of Louisiana Citizens (Citizens) I respectfully dissent in the majority's reasoning and interpretation of damages and penalties under La. R.S. 22:1220(A) and (C).
A chronology of the Veades' claim is as follows. Notice of the Veades' claim was provided to Citizens on September 5, 2005. On October 5, 2005 Citizens assigned the claim to AIG Central Claims Service (AIG) with instructions to inspect the property for wind damage. AIG claims adjuster, David Black inspected the property on October 19, 2005. Mr. Black issued a report on December 15, 2005, concluding that the actual cash value of the damage to the Veades' dwelling was $100,000 and the actual cash value of the damage to the Veades' personal property was $23,816.15. Mr. Black informed the Veades that he had filed the damage report for policy limits. Inexplicably, in late December, after repeatedly denying that a report was submitted, Citizens changed its position stating that the Black report had been received but was incomplete.
Rather than requesting that Mr. Black complete the report, Citizens assigned yet another adjuster from Hammerman and Gainer (Hammerman) on December 28, 2005. Hammerman inspected the property on January 4, 2006. On January 18, 2006 Hammerman submitted its report to *1284 Citizens. Surprisingly, that report stated that all property damage resulted from tidal action and flooding, not wind. Citizens promptly wrote a letter denying the claim and closed the file the next day on January 20, 2006.
Approximately two months later, on March 3, 2006, Citizens acknowledged the roof damage was as a result of wind damage. Hammerman rendered yet another report estimating damages from the roof down to ceiling sheetrock at $43,134.69. Citizens made no tender. Citizens received yet another report dated October 3, 2006, from Rimkus Engineering assessing additional monies owed to the Veades. Likewise, no tender was forthcoming on this occasion.
According to Citizens, after the deductible, the Veades were owed $43,687.70 under the policy. However, no tender was made. Even though Citizens had two separate evaluations of damages ranging from policy limits (December 15, 2005) to $43,687.70 (October 3, 2006) in its possession for nearly one year, it took no action. This delay negates the suggestion that a second adjustor's report was required to timely adjust the claim. Such delays lead the objective observer to only one conclusion; this process was designed to discourage insureds from pursuing their claims.
In Orellana v. Louisiana Citizens Property Ins. Corp., XXXX-XXXX (La.App. 4 Cir. 2007), 972 So.2d 1252, this court recognized that Citizens' bad faith claims handling was the cause of the insured's mental anguish and stress. This Court affirmed an award of $125,000 in general damages to Mr. Orellana. The majority distinguishes Mr. Orellana's damages from the Veades' because Mr. Orellana had to watch his home deteriorate, while the Veades' property was a second home that was totally destroyed.
Although the facts of the claim may differ, the result is the same, extreme emotional distress. In cases such as these, the level of mental anguish should be determined by the record. At trial the Veades presented ample evidence to establish the emotional toll the claim process had on the two of them. The stress, frustration and inconvenience experienced by the Veades because of direct misrepresentations and unexplained delays of accurate evaluations by Citizens cannot be diminished by the fact that their property was completely destroyed.
The trial judge's decision that the property was a total loss due to wind, information Citizens had in its possession but chose to ignore as early as December of 2005, further documents Citizens' intentional acts to deny and/or delay payments to the Veades. The circumstances surrounding this case are equally as egregious as those in Orellana. Therefore, I would increase the general damages award to $50,000 for Mr. Veade and $50,000 for Mrs. Veade for this nearly three year ordeal.
Additionally, I find the trial court's separate award of penalties under 22:1220(C) to be inadequate. The assessment of penalties under this statute is designed to deter misconduct by the insurers during the claims process. The misconduct in the handling of the Veades' claim was excessive and warrants more than a minor penalty. Penal statutes are to be strictly construed. Theriot v. Midland Risk Insurance, Co., 694 So.2d 184 (La.5/20/97). La. R.S. 22:1220(C) reads in pertinent part:
In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages *1285 sustained or five thousand dollars, whichever is greater ...
Strictly construed, subsection (C) clearly provides that penalties can be double the general damages sustained. Accordingly, the penalties under the facts and circumstances of this case, pursuant to La. R.S. 22:1220(C), should be $210,000.
NOTES
[1] AIG was a claims handler working with the direct authority of the LCPIC.
[2] Mr. Veade testified that he received a denial letter as a result of Mr. Black's inspection. However, he could not locate the letter and it was not contained in LCPIC's claim file.
[3] The motions for partial new trial filed by the Veades and LCPIC are not contained in the record. However, the record contains the judgment granting the motions, the transcript of the hearing, and the amended judgment.
[4] The majority opinion in Orellana did not address LCPIC's intent. However, Judge Love's dissent addressed that the record did not contain evidence that demonstrated the intent to aggrieve Mr. Orellana. Orellana v. La. Citizens Prop. Ins. Corp., 07-1095, p. 6 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252, 1257 (Love, J., concurring in part and dissenting in part).
[5] "OIA" refers to Mr. Black, the initial adjuster.