NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-698

GINGER HINCH DURIO

VERSUS

HORACE MANN INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-2759
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Michael E. Holoway
Milling Benson Woodward L.L.P.
827 W. 22nd Avenue
Covington, LA 70433
(985) 871-3924
Counsel for Defendant/Appellant:
    Horace Mann Insurance Company

**Hunter W. Lundy**
**Rudie R. Soileau, Jr.**
**Jackey W. South**
**Lundy, Lundy, Soileau & South LLP**
**501 Broad Street**
**Lake Charles, LA 70601**
**(337) 439-0707**
**Counsel for Plaintiff/Appellant:**
     **Ginger Hinch Durio**

**DECUIR, Judge.**

Ginger Hinch Durio filed suit against her insurer, Horace Mann Insurance Company, regarding the extent of damages sustained as a result of Hurricane Rita. Durio's home on East Banbury Drive in Lake Charles was severely damaged. The insurer tendered $19,872.96 for repairs, but Durio requested policy limits of $173,300.00. After a bench trial, the trial court ordered payment of policy limits on "Coverage A" and other coverage amounts, plus penalties, attorney fees, and general damages, for a total award of $1,519,600.56. Horace Mann appealed the judgment in its entirety, while Durio appealed the award of general damages. For the following reasons, we affirm the finding of liability for policy limits, penalties, attorney fees, and general damages and the award of damages for mental anguish.

In September of 2005, Ginger Durio was living at 3616 East Banbury Drive with her three children. She worked as a "Master Teacher" for the Calcasieu Parish School Board and was recently divorced. Facing financial difficulties, Durio had her home up for sale and had recently entered into a buy-sell agreement at the time Hurricane Rita struck on September 24. In anticipation of their move, the Durios had packed up many of their belongings and stored them in the garage. The storm ripped off the garage door and exposed the interior of the home to the violent winds of the hurricane. The ceiling inside the garage collapsed onto their stored belongings. Electrical wiring, which originated inside the garage, was pulled and damaged throughout the house. According to an engineering report obtained by Durio four months after the hurricane, the structural and mechanical integrity of the house was compromised, and the HVAC, electrical, and plumbing systems had failed.

In effect at the time of the hurricane was a homeowner's insurance policy issued by Horace Mann to Durio and her former husband, John Durio. The policy

provided the following coverage limits: Coverage A, Structure - $173,300.00; Coverage B, Adjacent Structures - $17,330.00; Coverage C, Contents - $103,980.00; and Coverage D, Additional Living Expenses - $103,980.00. Coverages A, B, and C were subject to increase for inflation purposes.

The record shows Horace Mann opened a claim file on September 27, 2005. Within days, a $2,500.00 check was issued to Durio for additional living expenses. The house was inspected on October 12, and by November 4, Durio had received payments of $18,293.70 under Coverage A and $8,217.03 under Coverage B. In the meantime, Durio hired an engineer and two contractors to estimate the damage to her home. She asked Horace Mann to re-evaluate her claim, which was done on November 18. Horace Mann issued a supplemental payment of $1,572.27 for structural damage but otherwise stood by its earlier estimate of damage to the house.

In January 2006, Horace Mann made a final payment of $5,300.00 in additional living expenses for a total of $7,800.00. Durio submitted a claim for lost contents in May 2006 and was paid the full amount of her Coverage C claim, or $47,061.44, but not until October 4, 2006. Also, in May 2006, Horace Mann prepared an engineering report detailing the damage to the Durio home. Although the report stopped short of recommending the demolition of the residence, it did include the following statement:

> The structural integrity of the attached Garage was compromised by wind forces associated with Hurricane Rita. This attached garage was in an eminent danger of collapse and represented a life safety hazard. Failure to stabilize the structure could result in the progressive collapse of the entire structure.

Nevertheless, Horace Mann offered no further payments under the structural damage portion of the policy and no additional living expenses were provided. Durio filed suit on June 16, 2006.

2

Meanwhile, the parties moved forward on the insurance claim. Horace Mann issued a report stating that a comprehensive repair plan should be developed. Durio submitted a repair estimate of $46,656.00. In 2007, Durio was paid $150,000.00 from the Road Home project. She failed to initiate any repairs on the house, yet the record contains evidence of the long waiting time to employ local contractors following the hurricane. Horace Mann failed to tender any further repair costs or living expenses. Durio submitted a subsequent repair estimate of $50,998.67, then an engineering report several months later which classified the house as a constructive total loss. Finally, in 2008, Durio sold the house to its original builder, who repaired it at his own cost of $35,000.00 and sold it for a profit.

After a six day bench trial, the court awarded contractual, general, and special damages, assessed penalties, and one-third attorney fees for a total of $1,519,600.56:

**CONTRACTUAL DAMAGES**

| | | | | |
|---|---|---|---|---|
| Coverage A (loss of residence) | $163,536.97 | + | 22:1220 penalties | $327,073.94 |
| Coverage B (other structures) | $8,361.91 | + | 22:1220 penalties | $16,722.90 |
| Coverage C (contents) | $0 | + | 22:1220 penalties | $5,000.00 |
| Coverage D (living expenses) | $39,000.00 | + | 22:1220 penalties | $78,000.00 |
| Total contractual damages | $210,898.88 | + | Total penalties | $426,796.84 |

**GENERAL AND SPECIAL DAMAGES**

| | | | | |
|---|---|---|---|---|
| Mental anguish | $57,000.00 | + | 22:1220 penalties | $114,000.00 |
| Lost wages | $17,309.00 | + | 22:1220 penalties | $34,618.00 |
| Retirement losses | $93,024.00 | + | 22:1220 penalties | $186,048.00 |
| Total general and special damages | $167,333.00 | + | Total penalties | $334,666.00 |

**ATTORNEY FEE**

| | |
|---|---|
| One-third contingency fee | $379,905.84 |

**TOTALS**

| | |
|---|---|
| Contractual damages | $210,898.88 |
| Contractual penalties | $426,796.84 |
| General/special damages | $167,333.00 |
| General/special penalties | $334,666.00 |
| Attorney fee | $379,905.84 |
| **TOTAL AWARD** | **$1,519,600.56** |

We will address the issues raised by the parties within the context of the damage categories as assessed by the trial court.

## CONTRACTUAL DAMAGES

Throughout Horace Mann's thirty-eight month period of adjusting Durio's claim, Horace Mann received varying reports of the damage sustained by the house. Its own adjustors and engineers recognized the extensive damage to the house and adjacent buildings, although there was some disagreement as to the financial estimates of the necessary repair costs. Records indicate that Horace Mann recognized the repairs would cost more than the amount originally paid, but no additional funds were ever tendered to Durio. Durio maintained throughout that she expected to be paid policy limits as she considered the house and adjacent structures to be a total loss. The trial court found Durio's evidence to be more credible. The court calculated Coverage A policy limits of $173,300.00, adjusted for inflation to $183,409.00, and awarded the difference between that figure and the amount initially paid by Horace Mann, or $163,536.97. For Coverage B, the court awarded the difference between what was paid initially and what amount should have been paid, or $8,361.91. We find no manifest error in these factual determinations based on credibility evaluations of the witnesses, engineering reports, and other evidence.

For Coverage D, additional living expenses, the trial court used the monthly figure originally requested by Durio for rental payments immediately after the storm, $1,950.00. The court then calculated the number of months living expenses were due based on the length of time Horace Mann worked on Durio's file without resolution until the house was sold in 2008. Horace Mann paid four months of living expenses but worked on the claim for thirty-eight months, for a total award of $39,000.00. In this appeal, Horace Mann contends the trial court erred in awarding rental payments far in excess of the expenses Durio actually incurred. The record shows that Durio

4

paid rent of $1,950.00 for the first three months after the storm, then moved to a place where she paid $900.00 per month, then finally moved after several more months to another location where she paid $700.00 per month.

Horace Mann contends it is liable only for the amounts actually paid by Durio, rather than the amount it initially agreed was reasonable immediately after the storm. Were Durio to have become homeless, would Horace Mann argue it owed no additional living expenses? Durio's action in moving to cheaper homes simply evidences her lack of funds, as she continued to make mortgage payments on the damaged and unlivable home on Banbury Drive. We find no error in this portion of the award.

Horace Mann did not dispute Durio's valuation of her damaged personal property submitted under Coverage C. Her claim submitted in May of 2006 was paid in full in the amount of $47,061.44. The payment, however, was made untimely, in October of 2006. The trial court awarded a $5,000.00 penalty for the late payment of this claim, which we will address in the penalty section below.

### GENERAL DAMAGES

General damages of $57,000.00 were awarded for Durio's mental anguish, characterized by stress-related physical and emotional symptoms, caused by Horace Mann's intentional bad faith breach of its duty under La.R.S. 22:1220 (now found at La.R.S. 22:1973.) Durio suffered from anxiety to an extent that she had to take medication, adjust her employment, and seek medical care for a variety of stress-related symptoms. The trial court found Horace Mann's conduct to be egregious and included such actions as assigning over eight different adjustors to this claim, facetiously sending Durio a lone check for $6.99 for loss of contents after noticing

a broken flower pot, and relying on the report of an engineer who inspected the house through the photographs and notes of an adjustor. Only when Horace Mann initiated a subrogation action against the builder of the house did the engineer actually visit the premises.

The award of general damages is affirmed, as we find the actions of Horace Mann to be intentional, in bad faith, and "designed to discourage the insureds from pursuing their claims." *Veade v. La. Citizens Prop. Corp.*, 08-0251, p. 2 (La. App. 4 Cir. 6/4/08), 985 So.2d 1275, 1284.

## SPECIAL DAMAGES

Durio was awarded $17,309.00 in lost wages and $93,024.00 in lost future retirement benefits for the period of time she was unable to work due to stress- related symptoms caused by the actions of Horace Mann. Horace Mann does not dispute the amounts awarded; rather, it alleges error in the trial court's decision to allow amendment of the pleadings, to include a claim for special damages, during trial, after the close of the plaintiff's case. Horace Mann contends this procedure violates the language of La.Code Civ.P. art. 1154, which allows for an amendment to the pleadings to conform to the evidence, but not for the addition of an issue not previously pled.

We disagree. The special damages alleged by Durio are included as part of the penalty provisions of the Insurance Code at La.R.S. 22:1220(A), now La.R.S. 22:1973. Penalties were prayed for in Durio's petition. Additionally, Horace Mann was fully aware of the health issues and employment claims prior to trial as discovery was extensive and apparently complete. In fact, Horace Mann hired its own

6

psychological and economic experts to counter Durio's anticipated evidence. The trial court did not err in allowing the amendment.

## PENALTIES

Durio's burden of proving her claim for penalties is three-fold. She must prove that the insurer received satisfactory proof of loss, that the insurer failed to tender payment within thirty days of receipt thereof, and that the insurer's failure to pay was arbitrary, capricious, or without probable cause. *La. Bag Co., Inc. v. Audubon Indem. Co.*, 08-453 (La. 12/2/08), 999 So.2d 1104. When the amount of damages is uncertain or is in dispute, the insurer, in order to avoid the assessment of penalties, must tender the reasonable amount that is due. *Harvey Canal Ltd. P'ship v. Lafayette Ins. Co.*, 09-605 (La.App. 5 Cir. 3/9/10), 39 So.3d 619. Further, "an insurer cannot 'stonewall' an insured simply because the insured is unable to prove the exact extent of his damages. *McDill [v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1091 (La.1985.)]" *La. Bag*, p. 15, 999 So.2d at 1115.

In the present case, the trial court found satisfactory proof of loss was received in May of 2006. Not only did Durio send documentation of over $45,000.00 worth of structural damage, but even Horace Mann's adjustors notified the company that Durio's losses exceeded the $19,872.96 payment made in November of 2005. The trial court characterized Horace Mann as having "acted in a dilatory and non-customer service fashion in adjusting or resolving" this claim and explained in oral reasons:

> It basically appears that this file was mismanaged. There is missing correspondence. There is missing photographs, unexplained handwritten notes, additional bureaucratic delays with third party delays with third party dealings, apparently a rotating door of adjusters all contributed to Horace Mann's failure to properly adjust this claim.

7

Pursuant to the finding of arbitrary and capricious behavior on the part of Horace Mann, the trial court assessed penalties of two times the amounts awarded on all contractual, general, and special damages, plus a $5,000.00 penalty for the late payment of Durio's Coverage C claim for content. In this appeal, Horace Mann contends the trial court erred in assessing penalties on the contractual awards, arguing that La.R.S. 22:1220(C) limits an award of penalties to two times the amount of general and special damages awarded, not amounts awarded under the contractual provisions of the insurance contract. Horace Mann also contests the merits of the penalty awards.

We disagree with the position argued by Horace Mann. First, the record supports the factual finding of the trial court that the handling of Durio's claim was arbitrary and capricious. Adjustor's reports went unheeded, contents loss was treated with sarcasm, and Durio's living arrangements were ignored. Even with adequate information on the increased repair estimates from its own adjustors, Horace Mann refused to tender the undisputed amount of the claim. Penalties are without question available in this instance. Furthermore, courts have awarded Section 1220(C) penalties for contractual damages. *See*, *Morrell v. Fisher*, 08-1260 (La.App. 3 Cir. 4/1/09), 7 So.3d 1264; *Wegener v. Lafayette Ins. Co.*, 09-72 (La.App. 4 Cir. 3/10/10), 34 So.2d 932, *writs granted*, 10-810, 10-811 (La. 6/25/10), 38 So.2d 358, 359; *Neal Auction Co., Inc. v. Lafayette Ins. Co.*, 08-0574 (La.App. 4 Cir. 4/29/09), 13 So.3d 1135, *writs denied*, 09-1499, 09-1608 (La. 11/6/09), 21 So.3d 313. Accordingly, we find no error in the penalties awarded by the trial court.

**ATTORNEY FEES**

The trial court awarded attorney fees of one-third of the total award, or $379,905.56 under La.R.S. 22:658, renumbered and now found at La.R.S. 22:1892. Horace Mann objects to the amount of the award and contends the statute authorizing such an award was not in effect at the time Durio's proof of claim was received by Horace Mann. An amendment to Section 658 to provide for an attorney fee award became effective on August 15, 2006, and cannot be applied retroactively. *Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/8/08), 988 So.2d 186. Nevertheless, "an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period," *Id*. at 199. The supreme court explained:

> Further, again because the duty is a continuing one, had plaintiff made satisfactory proof of loss prior to the amendment and had Lafayette paid that claim, and had plaintiff discovered new damage and made satisfactory proof which Lafayette failed to pay within the time period contained in the statute, but after the amendment became effective, Lafayette could have been subject to the penalties contained in the amendment because the claim would have arisen *after* the effective date of the amendment.

*Id*. In the present case, the trial court found Durio's final proof of loss was received by Horace Mann in 2008, long after the applicable provision for attorney fees became effective; therefore, the 2006 amendment applied. We find no error in this conclusion.

Likewise, we affirm the amount of the award made by the trial court. The court awarded one-third the total amount of damages, in keeping with the contingency fee contract submitted into evidence, and well within the discretion of the trial court.

**MOTION TO RECUSE**

Subsequent to the trial court's oral ruling from the bench but prior to judgment, Horace Mann filed a motion to recuse, alleging bias on the part of the trial judge.

Specifically, Horace Mann asserted that the trial judge's previous position as a Calcasieu Parish School Board member rendered him biased in favor of Durio because he had once voted on issues pertaining to her sabbatical request. Horace Mann also argued that the award in favor of Durio would improperly benefit the trial judge's colleague, because Durio's previous attorney, who allegedly would be entitled to a share of the fee, was a newly elected judge for the Fourteenth Judicial District Court. We find no merit to these arguments. Therefore, we affirm the denial of Horace Mann's motion to recuse.

## PLAINTIFF'S APPEAL OF GENERAL DAMAGES

Finally, we address the plaintiff's complaint that the general damage award is inadequate. We disagree with Durio's contention. The trial court determined that Horace Mann breached its duty of good faith and fair dealing. The court also found that Durio's evidence of stress, mental anguish, and physical manifestations thereof could be valued at $3,000.00 per month for the thirty-eight months her claim with Horace Mann was pending. However, the court further found that only half those damages could be attributed to the actions of Horace Mann. The court considered other factors in Durio's life, including family, job, and other financial pressures, as equally causative of her mental anguish and stress-related physical symptoms. Our review of the record reveals no manifest error in this factual conclusion. Additionally, considering similar jurisprudence which assessed general damages against insurers who intentionally mishandled hurricane claims, we find the $57,000.00 award to Durio to be appropriate. *See*, *Farber American Nat. Prop. & Cas. Co.*, 08-821 (La.App. 3 Cir. 12/10/08), 999 So.2d 328, *writ denied*, 09-0053 (La.

10

3/6/09), 3 So.3d 488; *Veade,* 985 So.2d 1275; *Orellana v. La. Citizens Prop. Corp.*, 07-1095 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252.

## DECREE

For the above and foregoing reasons, the judgment of the trial court is affirmed.

Costs of this appeal are assessed to Horace Mann Insurance Company.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal, Rule 2–16.3.