JAMES F. McKAY III, Judge.
1This Hurricane Katrina litigation involves a dispute between a homeowner and their insurance company over coverage issues. For the following reasons, we affirm the judgment of the court below.
FACTS AND PROCEDURAL HISTORY
Hildreth Wegener III and Robin L. Wegener owned and resided in a waterfront home located in the Venetian Isles subdivision of New Orleans East. On August 29, 2005, Hurricane Katrina caused severe damage to the Wegeners’ home. Some of the damage was caused by storm surge and some was caused by wind and wind driven rain. At the time of Hurricane Katrina, the Wegeners’ home was insured by Lafayette Insurance Company.
On September 8, 2005, the Wegeners notified Lafayette of their loss. On October 15, 2005, Lafayette assigned the claim to Teresa Nelson, an adjuster with Cunningham Lindsey US, Inc. Ms. Nelson contacted the Wegeners and met them at their property for an inspection on October 19, 2005. On November 14, 2005, [2Ms. Nelson issued a report which found “significant water damage to the inside of the home” and “extensive damage to the shingles on all slopes” of the roof. However, Ms. Nelson recommended payment of only $24,979.90 for the damage to the Wegen-ers’ dwelling and contents and no payment for damage to other structures or for prohibited use, loss of use, or additional living expenses. Thereupon, Lafayette issued payments to the Wegeners in the sums of $23,888.48 for the covered damage to their dwelling and $1,091.42 for the covered damage to their personal property on November 23, 2005. On January 30, 2006, Lafayette paid the Wegeners an additional $658.66 for an awning and $1,039.20 for a wet mattress set.
The Wegeners were not satisfied with the amounts tendered by Lafayette and *935 they retained a structural engineer, Roy Carruba, to inspect their property and prepare a report on its damage. Mr. Car-ruba’s report, dated March 15, 2006, found that in addition to severe water infiltration, excessive wind pressures had caused the house to move laterally on its foundation, loosened the primary framing member connections, and damaged the wooden structure. Mr. Carruba recommended that the Wegeners demolish the structure entirely down to the foundation. The Wegeners forwarded Mr. Carruba’s report to Lafayette on March 22, 2006.
Lafayette then retained Haag Engineering to inspect the issue of wind versus flood damage and prepare a report. Haag issued its report on June 12, 2006. The report stated that “Maximum sustained winds in this neighborhood during ^Hurricane Katrina were, according to the National Weather Service, on the order of 70 mph, less than hurricane force,” attributed almost all damage to the first floor and below to storm surge, and found no apparent storm damage to the frame or foundation of the home. Based on this report, Lafayette refused to make any further payments to the Wegeners.
Based on Mr. Carruba’s findings and the recommendations in his report, the Weg-eners had their house torn down. About six weeks after Hurricane Katrina, the Wegeners moved into a piece of property they owned in Mandeville and had previously rented out for $1,400 to $1,500 per month.
On May 31, 2007, the Wegeners filed suit against Lafayette for breach of contract, general damages and penalties pursuant to La. R.S. 22:658 and La. R.S. 22:1220. A jury trial was held from June 30, 2008 through July 3, 2008. The jury awarded the Wegeners $20,000.00 for the wind damage to the structure, $4,000.00 for wind damage to the contents of the property and $45,800.00 in additional living expenses. The Wegeners filed a motion for judgment notwithstanding the verdict or new trial (JNOV). A hearing was held on this motion on September 26, 2008, and on October 24, 2008, the trial court granted the JNOV, finding that as to the issues of penalties, pursuant to La. R.S. 22:1220, the facts and inferences pointed so strongly in favor of the plaintiffs that reasonable jurors could not arrive at a contrary verdict that the defendant’s failure to pay the plaintiffs for their additional living expenses within sixty (60) days after receipt of satisfactory proof of loss was arbitrary, capricious and without probable cause. Lafayette now appeals from the Injury’s verdict and the trial court’s judgment. The Wegeners have answered the appeal.
DISCUSSION
On appeal, Lafayette raises the following assignments of error: 1) the trial court erred in granting plaintiffs’ motion for judgment notwithstanding the verdict and awarding penalties pursuant to La. R.S. 22:1220; 2) the jury erred in awarding damages to the plaintiffs for additional living expenses that were not caused by a covered peril; 3) the jury erred in finding that Lafayette violated the provisions of La. R.S. 22:1220; and 4) the trial court erred by not allowing testimony or evidence of plaintiffs’ flood insurance proceeds. On cross-appeal, the Wegeners argue that the trial court erred in failing to grant a new trial on either peremptory or discretionary grounds.
We will first address the defendant’s second and third assignments of error. Lafayette contends that the jury erred in awarding damages to the plaintiffs for additional living expenses that were not caused by a covered peril and in finding that Lafayette “misrepresented pertinent facts or insurance policy provisions relating to any coverages at issue *936 and/or arbitrarily, capriciously, or without probable cause failed to pay the amount due on Mr. and Mrs. Wegener’s homeowner’s claim within sixty days after it received satisfactory proofs of loss.”
The jury found that Lafayette owed the Wegeners their policy limits of $45,800.00 for additional living expenses (loss of use), including loss of rental income, incurred as a result of wind damage to their home. At trial, evidence was ^adduced that indicated that a great deal of the damage to the Wegeners’ property was caused by wind damage. Clearly, there was an evidentia-ry basis for the jury to determine that the Wegeners were entitled to their additional living expenses.
Under La. R.S. 22:1220(B)(1), an insurer breaches its duty of good faith and fair dealing owed to its insured by knowingly “[mjisrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.” A misrepresentation relating to a coverage issue would involve facts about the policy, “or exclusions from coverage.” Talton v. USAA Cas. Ins. Co., 2006-1513, pp. 19-20 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 709-710. In the instant case, when the adjuster retained by Lafayette inspected the loss on October 19, 2005, she told the Wegeners: “We both know what happened here, but if water touched it, we’re not paying for it.” The jury reasonably could have found that this was a misrepresentation regarding the policy.
Under La. R.S. 22:1220(B)(5), an insurer breaches its duty of good faith and fair dealing owed to its insured by knowingly “[flailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.” To recover under the statute, an insured “has the burden of establishing three things: (i) that the insurer received a satisfactory proof of loss, (ii) that the insurer failed to pay the claim within the applicable statutory period, and (iii) that the insurer’s failure to pay was arbitrary and capricious.” Boudreaux v. State Farm Mut. Auto. Ins. Co., 2004-1339 (La.App. 4 Cir. 2/2/05), 896 So.2d 230, 233 (citing Sterling v. U.S. Agencies Casualty Co., 2001-2360 (La.App. 4 Cir. 5/15/02), 818 So.2d 1053, 1057. In this case, Lafayette received satisfactory proof of the Wegeners’ loss at the latest on October 19, 2005 when Ms. Nelson inspected the insured property and observed “significant water damage to the inside of the home” as a direct result of “extensive damage to the shingles on all slopes” of the roof. The damages to the Wegeners’ property included the roof, soffits, facia and siding as well as the electrical system on the third floor and ceilings and contents throughout the structure. An awning over the Wegeners’ dock was also blown away. Although Lafayette paid the Wegeners $24,979.90 for the insured dwelling and contents, the jury found that Lafayette violated La. R.S. 22:1220(B)(5). Based on the evidence before this Court, we cannot find that the jury’s conclusion was clearly wrong or manifestly erroneous.
We will now address the defendant’s first assignment of error. On appeal, an appellate court reviews a JNOV using the same criteria the trial court uses. Thus, the appellate court must determine whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. If the appellate court determines that reasonable persons might reach a different conclusion, then the trial court erred in granting the motion and the jury verdict should be reinstated. Forbes v. Cockerham, 2008-0762, pp. 30-31 (La.1/21/09), 5 *937 So.3d 839, 857-58. In the instant case, the trial court found that on the issue of penalties for bad faith claims |7adjusting, “the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs on this issue that reasonable jurors could not arrive at a contrary verdict.” The jury found Lafayette to be in violation of the provisions of La. R.S. 22:1220 and therefore should have awarded penalties under La. R.S. 22:1220. This Court recently conducted a de novo review of a jury verdict finding that an insurance company “misrepresented policy provisions” and awarded penalties in a Katrina ease involving a commercial insurance policy. The Court awarded the plaintiff a penalty of “two times the damages sustained” under La. R.S. 22:1220(C). Neal Auction Co., Inc. v. Lafayette Insurnce Co., 2008-0574 (La.App. 4 Cir. 4/29/09), 13 So.3d 1135, writ denied, 2009-1499, 2009-1608 (La.11/6/09), 21 So.2d 313. That is the same approach employed by the trial court in this case. Accordingly, we find no error in the trial court’s granting a JNOV in this case.
In its fourth assignment of error, Lafayette contends that the trial court erred by not allowing testimony or evidence of the plaintiffs’ flood insurance proceeds. The Louisiana Fifth Circuit Court of Appeal has observed that wind insurance policies and flood insurance policies “are complimentary and do not cover the same types of losses” and do not create a situation of “double coverage.” Urrate v. Argonaut Great Central Ins. Co., 2004-0256 (La.App. 5 Cir. 8/31/04), 881 So.2d 787, 789. Therefore, the Wegener’s receipt of payments under a flood insurance policy is not relevant. Any probative value would be greatly outweighed by unfair prejudice and confusion of the issues. See La. C.E. art. 403. Accordingly, we find no merit in Lafayette’s fourth assignment of error.
|sOn cross-appeal, the Wegeners argue that the trial court erred in failing to grant a new trial on either peremptory or discretionary grounds. On appeal, a trial court’s granting or denial of a motion for new trial is reviewed for abuse of discretion. Davis v. Wal-Mart Stores, Inc., 2000-0445, p. 10 (La.11/28/00), 774 So.2d 84, 93. It is only when a verdict or judgment appears contrary to the law and evidence that a new trial should be granted. See La. C.C.P. art. 1972. In the instant case, the trial court carefully weighed the evidence before it and applied the law accordingly. We find no abuse of discretion in the trial court’s refusal to grant the Wegeners a new trial.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
LOVE, J., concurs and assigns reasons.
BELSOME, J., concurs with reasons.