JOHNSON, Justice.
11 These consolidated writ applications involve Plaintiffs’ claims for property damage to their home following Hurricane Ka *1223 trina and damages and penalties against their homeowner’s insurer pursuant to La. R.S. 22:658 and La. R.S. 22:122o.[1] We granted the writ applications to review the correctness of the rulings of the lower courts and the correctness of the jury’s verdict. After review of the record and applicable law, we find the trial court’s Jury Instructions and Jury Interrogatories contained legal errors, resulting in the inability of the jury to reach a proper verdict. For the reasons that follow, we vacate the jury’s verdict and the decisions of the lower courts and remand this matter to the trial court for a new trial.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, Hildrith and Robin Wegener, owned and lived with their two young 12daughters in a two-story property located at 20601-03 Old Spanish Trail in the Venetian Isles subdivision in New Orleans, Louisiana. Plaintiffs obtained a homeowner’s insurance policy on the property which was issued by defendant, Lafayette Insurance Company (“Lafayette”). The Lafayette policy provided coverage limits of $229,000 on the dwelling, $22,900 on other structures, $114,500 on personal property (contents), and $45,800 for loss of use (additional living expenses).
On August 29, 2005, plaintiffs’ home was one of thousands that sustained severe damage caused by wind and flooding as a result of Hurricane Katrina. The home was raised approximately four feet on a piers and beam foundation, and it is undisputed that the inside of the house incurred approximately 5½ feet of flood waters. The Wegeners provided Lafayette with a notice of the loss on September 3, 2005. In response, Lafayette assigned the claim to an independent adjustment company, Cunningham-Lindsey US, Inc. Theresa Nelson, an adjuster with Cunningham-Lindsey, inspected the Wegener property on October 19, 2005. On November 14, 2005, Ms. Nelson issued a report and estimate of damage caused by wind, reflecting a total of $24,979.90 for the dwelling and contents. No amount was provided for additional living expenses because Ms. Nelson opined these expenses were incurred due to the civil authority mandated evacuation from the threat of flood, and due to flood penetration throughout the home, neither of which were covered by the Lafayette policy. On November 23, 2005, in accordance with Ms. Nelson’s report, Lafayette issued payments to the Wegeners of $23,888.48 for the dwelling and $1,091.42 for contents. The Wegeners disputed these payments, contending they were inadequate and did not provide for damages to certain other items. Ms. Nelson reinspected the property, resulting in the addition of items to the list of damaged property, including a mattress set in the master bedroom and a canvas awning on the | <¡dock. On January 30, 2006, Lafayette issued supplemental payments to the Wegeners of $658.66 for the dwelling (awning) and $1,039.20 for contents (mattress set).
The Wegeners subsequently hired a structural engineer, Roy M. Carruba, to conduct an inspection of their house. Mr. Carruba issued a report on March 15, 2006, in which he opined that in addition to damage caused by wind driven water infiltration, excessive wind pressures had caused the house to move laterally on its foundation, loosened the primary framing member connections, and damaged the wooden structures. Thus, Mr. Carruba recommended the structure be demolished. The Wegeners forwarded Mr. Carruba’s *1224 report to Lafayette on March 22, 2006. In response, Lafayette hired HAAG Engineering Co. to inspect the property to evaluate the damage caused by flooding versus the damage caused by wind. HAAG Engineering inspected the property on April 19, 2006. The HAAG engineers determined that flooding caused nearly all of the first story damage, and further found no structural damage to the house. Based on this report, no further adjustments or payments were made to the Weg-eners by Lafayette.
On September 2, 2005, the Wegeners filed a claim with their flood insurer, State Farm Insurance Company.[2] The State Farm flood policy provided coverage limits of $198,900 for the dwelling and $27,000 for contents. The Statement of Loss prepared by State Farm for the Wegeners’ home shows total damage to the dwelling of $198,900, and damage to contents exceeding the policy limits of $27,000. On November 30, 2005, State Farm paid the Wegeners policy limits for both the dwelling and contents. On October 2, 2007, State Farm also paid the Wegeners an additional $8,330 for Increased Cost of Compliance (ICC) to demolish the structure, for total 1 ¿payments of $234,230.
On June 1, 2007, the Wegeners filed suit against Lafayette, asserting the structure was a total loss and they were entitled to the full amount of their policy limits. The Wegeners also sought payment for additional living expensesfloss of use, mental anguish damages, and statutory penalties and attorney’s fees pursuant to La. R.S. 22:658 and La. R.S. 22:1220.
The Wegeners’ suit against Lafayette was tried by a jury from June 30, 2008, to July 3, 2008. The jury returned a verdict in favor of the Wegeners and awarded an additional $20,000 for damage to the dwelling; an additional $4,000 for damage to contents; and additional living expenses (loss of use) in the amount of $45,800. The jury found that Lafayette violated La. R.S. 22:1220(B)(1) and/or (5),[3] but not La. R.S. 22:658.[4] No award was made for mental *1225 anguish/emotional distress damages or |fipenalties under La. R.S. 22:1220(C). Judgment was rendered on the jury verdict on July 22, 2008, awarding the Wegen-ers a total sum of $69,800 plus interest and court costs.
On August 5, 2008, the Wegeners filed a Motion for Judgment Notwithstanding the Verdict or New Trial, arguing the evidence supported an award for emotional distress damages and penalties, and additional wind damage to their dwelling and personal property. Alternatively, the Wegeners sought a new trial on the basis that the jury’s verdict was contrary to the law and evidence.
On October 24, 2008, the trial court granted the motion for JNOV, in part, as to the issue of penalties. The trial court found, pursuant to La. R.S. 22:1220, “the facts and inferences point so strongly and overwhelmingly in favor of plaintiffs that reasonable jurors could not arrive at a contrary verdict, that the defendant’s actions in failing to pay plaintiffs for their additional living expenses within sixty (60) days after receipt of satisfactory proof of loss were arbitrary, capricious and without probable cause.” The court awarded $91,600 in penalties, twice the amount awarded by the jury for additional living expenses.
Lafayette suspensively appealed the trial court’s judgment, seeking review of the jury’s finding that Lafayette violated La. R.S. 22:1220 and the award of $45,8001 Bfor additional living expenses. Lafayette also sought review of the trial court’s exclusion of evidence of the plaintiffs’ flood insurance claim and proceeds and the trial court’s granting of the JNOV and award of $91,600 in penalties. The Wegeners answered the appeal seeking increases in the amounts of damages and penalties, or alternatively a new trial.
The court of appeal affirmed the trial court’s judgment.[5] On the issue of additional living expenses, the court noted evidence was adduced at trial indicating a great deal of the damage to the Wegeners’ property was caused by wind. Thus, the court concluded there was an evidentiary basis for the jury to determine the Wegen-ers were entitled to their additional living expenses. The court also affirmed the jury’s finding that Lafayette violated La. R.S. 22:1220, noting there was evidence demonstrating a misrepresentation of pertinent facts or insurance policy provisions relative- to. coverage under La. R.S. 22:1220(B)(1) and also evidence demonstrating Lafayette was arbitrary and capricious in failing to pay the amount of the claim due to the Wegeners -within sixty days pursuant to La. R.S. 22:1220(B)(5).
The court of appeal found no error in the trial court’s granting of the JNOV, *1226 reasoning that penalties should have been awarded because the jury found Lafayette to be in violation of La. R.S. 22:1220. The court also affirmed the penalty of two times the damages sustained, citing Neal Auction Co., Inc. v. Lafayette Insurance Co., 2008-0574 (La.App. 4 Cir. 4/29/09), 13 So.3d 1135 (in which the court awarded penalties of two times the damages sustained).
Additionally, the court of appeal found no error in the trial court’s exclusion of testimony or evidence of the plaintiffs’ flood insurance proceeds. The court relied on Urrate v. Argonaut Great Central Ins. Co., 2004-0256 (La.App. 5 Cir. 8/31/04), 7881 So.2d 787, for the proposition that wind insurance policies and flood insurance policies are complimentary and do not cover the same losses. Therefore, the court concluded that the plaintiffs’ receipt of payments under their flood insurance policy was irrelevant. The court also noted that any probative value of the evidence would be greatly outweighed by unfair prejudice and confusion of the issues.
On the Wegeners’ appeal, the court found no abuse of the trial court’s discretion in refusing to grant the Wegeners a new trial. The court noted that the trial court carefully weighed the evidence before it and applied the law accordingly.
Both Lafayette and the Wegeners filed writ applications in this Court, which we granted.[6]
DISCUSSION
Lafayette raises five assignments of error: the trial court erred in granting the JNOV;[7] the trial court erred in calculating the award of penalties pursuant to La. R.S. 22:1220; the trial court erred in excluding evidence of plaintiffs’ flood insurance claim and payments; the jury erred in awarding damages for additional living expenses; and the jury’s finding that Lafayette violated the provision of La. R.S. 22:1220 was erroneous.
The Wegeners argue they are entitled to a new trial because the jury failed to 1 saward mental anguish and emotional distress damages even though it found Lafayette violated La. R.S. 22:1220. The Wegeners assert the jury was necessarily influenced by an erroneous jury instruction which provided there must be an “intent to aggrieve” the plaintiffs in order to recover damages for emotional distress/mental anguish. The Wegeners argue that the evidence of mental distress was unrefuted, and the jury’s failure to award any damages was erroneous. The Wegeners note the jury’s confusion is further demonstrated by its inconsistent verdict of finding Lafayette violated La. R.S. *1227 22:1220, but not La. R.S. 22:658. The Wegeners claim the jury was confused over the jury instructions which provided that the Wegeners could only be awarded penalties under either statute, but not both. Finally, the Wegeners assert that they are entitled to a new trial on discretionary grounds based on numerous instances of unprofessional conduct by Lafayette.
The Code of Civil Procedure provides for a new trial “when the verdict or judgment appears clearly contrary to the law and the evidence.” La. C.C.P. art. 1972(1). After reviewing the record, we find the Wegeners should have been granted a new trial. We conclude that the Jury Instructions and Jury Interrogatories contained legal errors sufficient to affect the jury’s verdict on the issue of damages and penalties pursuant to La. R.S. 22:1220, and resulted in a verdict that was contrary to the law.
We agree with the Plaintiffs that the Jury Instruction given by the trial court regarding emotional distress/mental anguish damages was erroneous. The following jury instruction was given: “In order to recover for mental anguish there must be evidence of a breach by the insurer and the intent to aggrieve the plaintiffs. Proof of intent may be inferred from the facts regarding the insurer’s actions or other circumstances.” (Emphasis added). This special instruction was proposed by |c|Lafayette, and essentially applies the provisions of La. C.C. art. 1998 [8] to limit the availability of general damages under La. R.S. 22:1220.
The Wegeners contemporaneously objected to this instruction and have raised this issue on appeal. The Wegeners argue their claims for mental anguish and emotional distress damages are not based on La. C.C. art. 1998, but solely on La. R.S. 22:1220. The jury instruction, requiring an “intent to aggrieve the plaintiff’ pursuant to La. C.C. art. 1998, is therefore erroneous and contributed to the erroneous verdict.
Based on its reading of this Court’s decision in Sher v. Lafayette Insurance Co., 2007-2441 (La.4/8/08), 988 So.2d 186, and Veade v. Louisiana Citizens Property Corp., 2008-0251 (La.App. 4 Cir. 6/4/08), 985 So.2d 1275, Lafayette asserts the jury was properly instructed. Lafayette argues that La. C.C. art. 1998 governs the recovery of mental anguish damages in actions arising out of contractual relations, and therefore limits recovery of mental anguish damages for breach of an insurance contract to situations where there is evidence that the insurer intended to aggrieve the plaintiff.
This Court has not directly addressed the interaction of La. C.C. 1998 and La. R.S. 22:1220. In Sher v. Lafayette Insurance Company, supra, this Court discussed mental anguish damages in the context of a suit against an insurer following Hurricane Katrina. In Sher, the plaintiff claimed mental anguish damages pursuant to La. C.C. art. 1998. The trial court refused to give a jury instruction on mental 110anguish damages under La. C.C. art. 1998, but allowed the plaintiff to proffer evidence of mental distress damages. The court of appeal concluded that while *1228 the plaintiff had produced evidence of mental anguish, there was no evidence as to the insurer’s actions which demonstrated that it intended to aggrieve the plaintiff. Thus, the court found the plaintiff was not materially or prejudicially affected or deprived of a substantial right. This Court affirmed, stating:
Because plaintiff failed to produce adequate evidence on which the jury could have based an award of mental anguish damages, the court of appeal correctly found that the trial court’s decision to disallow a jury instruction regarding mental anguish damages pursuant to Article 1998 did not effect the outcome of the trial, and therefore, was not error. By means of the same analysis, we conclude that the trial court’s error, if any, in disallowing the proffered evidence to be presented to the jury, and in failing to include a line item for mental anguish on the jury verdict form were harmless, in that there was no legal basis for the jury to have found damages for mental anguish. Under the particular circumstances of this case, we cannot conclude that either the trial court or the court of appeal abused its discretion.
Sher, 988 So.2d at 203. The majority opinion did not discuss the interplay between La. C.C. art. 1998 and La. R.S. 22:1220. However, in dissenting from the majority opinion on this issue, Justice Knoll referred to Orellana v. Louisiana Citizens Property Ins. Corp., 2007-1095 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252, and applied La. C.C. art. 1998 together with La. R.S. 22:1220 to find that bad faith on the part of Lafayette represented a basis for the trial court to instruct the jury on damages for nonpecuniary loss.
In Orellana v. Louisiana Citizens Property Ins. Corp., supra, the trial court awarded plaintiffs damages for mental anguish as a result of the insurer’s bad faith adjustment of their claim. The insurer appealed, arguing the trial court erred in awarding mental anguish damages in contravention of La. C.C. art. 1998. The court of appeal affirmed, noting that La. R.S. 22:1220 clearly allows for the assessment of general and special damages for the insurer’s breach of its duty. Orellana, 972 Soj2d11 at 1256. In her dissent, Judge Love opined that La. C.C. art. 1998 must be read in conjunction with La. R.S. 22:1220, and while La. R.S. 22:1220 permits the award of damages, La. C.C. art. 1998 specifically limits the damages for nonpecuniary losses resulting from contracts for nonpecuniary interests (such as insurance contract). Judge Love noted there was no evidence of the insurer’s intent to aggrieve the plaintiffs as required by Article 1998. Id. at 1257. Judge Can-nizzaro also dissented, finding that Article 1998 dictates the limited circumstances nonpecuniary damages are awarded for breach of contracts. Judge Cannizzaro found that Article 1998 barred plaintiffs’ recovery of mental anguish damages because the record contained no evidence that the insurer intended to aggrieve or cause distress of any nature to the plaintiffs. Id. at 1259.
Other circuit courts have also awarded mental anguish damages when an insurer breaches its duty under La. R.S. 22:1220, with no reference to La. C.C. art. 1998. See Clark v. McNabb, 2004-0005 (La.App. 3 Cir. 5/19/04), 878 So.2d 677, 686; Farber v. American National Property & Casualty Co., 2008-821 (La.App. 3 Cir. 12/10/08), 999 So.2d 328, 337; Lewis v. State Farm, Ins. Co., 41,527 (La.App. 2 Cir. 12/27/06), 946 So.2d 708, 728.[9]
*1229 Following Orellana, the Fourth Circuit again addressed this issue in Veade v. Louisiana Citizens Property Corp., supra, in an opinion authored by Judge' Love. Tracking the dissent in Orellana, the court held that although damages for mental anguish are recoverable under La. R.S. 22:1220, La. C.C. art. 1998 limits the award of such damages. Thus, in order to recover for mental anguish, there must be evidence of a breach by the insurer and the intent to aggrieve the plaintiff. Veade, 985 So.2d 12at 1280.
We disagree with the holding in Veade, and find the court’s reliance on La. C.C. art. 1998 to be misplaced. The Wegeners’ claim for mental distress does not arise from a breach of their insurance contract with Lafayette. Rather, their claim is based on Lafayette’s alleged violation of its statutory duty under La. R.S. 22:1220. La. R.S. 22:1220 instructs that an insurer owes a duty of good faith and fair dealing to its insured. This statute sets forth certain prohibited acts, which when knowingly-committed by an insurer, constitutes a breach of this duty. The general and special damages award authorized by the statute is directed at misconduct outside of the scope of an ordinary breach of contract.
This Court has previously recognized that the duties of an insurer under La. R.S. 22:1220 are separate and distinct from its duties under the insurance contract. In Manuel v. Louisiana Sheriff’s Risk Management, 95-0406 (La.11/27/95), 664 So.2d 81, we considered whether La. R.S. 22:1220 could be applied relative to a settlement under an insurance policy where the policy was issued before the statute was enacted, but the conduct which gave rise to the suit occurred after the statute’s effective date. In finding that the statute did not impair the insurance contract, this Court stated:
First, the statute does not speak on a matter that is a subject of the contract, or is specifically addressed in the contract. The statute speaks of an insurer’s obligation to act in good faith toward insured and non-insured claimants and establishes penalties for the commission of certain acts, none of which are covered in the contract. Thus, the subject matter of the statute is unrelated to that of the contract. Additionally, R.S. 22:1220 does not alter or change specific terms of the contract. In relation to this case, the statute speaks to undue delays in the payment of settlements reduced to writing. The duties that it does impose upon insurers are separate and distinct from the duties mentioned in the contract of insurance. These duties apply to the insurer’s obligation not simply to pay, but to promptly pay valid claims under the settlement, with, in this case, the non-insured claimant. Simply put, there is no contractual impairment present. (Emphasis added)
| ^Manuel, 664 So.2d at 84.
The federal Fifth Circuit has considered the application of La. C.C. art. 1998 to claims for mental anguish damages under La. R.S. 22:1220. In Dickerson v. Lexington Ins. Co., 556 F.3d 290 (5th Cir.2009), the plaintiffs filed suit against their insurer for damages to their home following Hurricane Katrina, including a claim for penalties under La. R.S. 22:1220. The insurer argued that La. C.C. art. 1998 barred recovery of mental anguish damages for breach of contract. Noting that Article 1998 provides that such damages are recoverable for breach of contract only if the primary object of the contract is non-peeuniary, or the defendant’s conduct was intended to aggrieve the plaintiff, and neither situation existed in the case, the insurer asserted that the plaintiffs could not recover for mental anguish.
*1230 The Fifth Circuit first observed that neither it, nor this Court, had addressed the interaction of La. C.C. art. 1998 and La. R.S. 22:1220. The court noted Louisiana appellate courts, both before and after Sher, have issued mixed opinions regarding the recovery of mental anguish damages under La. R.S. 22:1220, mostly without addressing the applicability of La. C.C. art. 1998. Dickerson, 556 F.3d at 302-303. The court also noted federal district courts in Louisiana had determined La. C.C. art. 1998 does not bar La. R.S. 22:1220 damages for mental anguish under insurance contacts, reasoning that the statute addresses a harm distinct from breach of contract. Id. at 303.
The Fifth Circuit held, as a matter of law, that La. C.C. art. 1998 was inapplicable and does not bar the award of mental anguish damages under .La. R.S. 22:1220 for breaches of the duty of good faith. The court reasoned:
The statute specifically refers to a breach of the duty of good faith; it does not refer to breach of contract. Furthermore, § 22:1220 is broadly worded, explicitly permitting liability for “any damages sustained,” 114including, without limitation, “any general or special damages.” General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms. By authorizing “any damages,” including “any general or special damages,” the legislature pointedly permitted the award of mental anguish damages. (Internal citations removed)
Dickerson, 556 F.3d at 303-304.
Following our reasoning in Manuel, and the court’s reasoning in Dickerson, we hold that La. C.C. art. 1998 has.no applicability in a claim for emotional distress/mental anguish damages under La. R.S. 22:1220. This result is supported by the plain language of La. R.S. 22:1220. The statute specifically refers to a breach of the duty of good faith and fair dealing, not a breach of the insurance contract. The Wegeners sought mental anguish damages specifically for Lafayette’s actions in failing to timely and fairly adjust their claim. Further, the statute is worded to permit “any general or' special damages” with no limitation or additional requirement other than the breach of duty by the insurer. Thus, we find the trial court’s Jury Instruction relative to mental anguish damages, requiring proof of an intent to aggrieve the plaintiffs before damages could be awarded, contained legal error.,
We also find legal error in the Jury Interrogatories as they relate to penalties under La. R.S. 22:1220.[10] One of Lafayette’s arguments is that the trial court erred in granting a JNOV and awarding the Wegeners penalties under La. R.S. 22:1220. Citing this Court’s decision in Calogero v. Safeway Ins. Co. of Louisiana, 99-1625 (La.1/19/00), 753 So.2d 170, 173, Lafayette argues that penalties under this statute |1Bare clearly discretionary, and *1231 thus the award of such penalties is entirely up to the discretion of the fact finder. Lafayette points out that the jury did not award penalties in response to Interrogatory 11, which asked the jury what amount it awarded the Wegeners for Lafayette’s violation of La. R.S. 22:1220. Lafayette states: “Given the facts as presented at trial, the jury did not abuse its discretion in its decision not to award penalties .... The jury’s unanimous decision not to award penalties should be reinstated and the JNOV granted by the trial court reversed.” (Emphasis added).
While we agree with Lafayette that penalties under La. R.S. 22:1220 are discretionary, after review of the Jury Interrogatories we find they were structured in a way which precluded the jury from reaching the issue of whether penalties should be awarded to the Wegeners.
The relevant Interrogatories and responses are set forth in Section III of the Jury Interrogatories, entitled “Claims Handling — Section 22:1220,” as follows:
8. Do you find by a preponderance of the evidence that Lafayette Insurance Company misrepresented pertinent facts of insurance policy provisions relating to any coverages at issue and/or arbitrarily, capriciously, or without probable cause failed to pay the amount due on Mr. and Mrs. Wegener’s homeowner’s claim within sixty days after it received satisfactory proofs of loss?
ANSWER: YES/NO_
If you answered “YES” to question 8, please proceed to question 9. If you answered “NO” to question 8, then skip the remaining questions, date and sign this form, and return to the courtroom.
9. Do you find by a preponderance of the evidence that Mr. and Mrs. Weg-ener suffered mental anguish and emotional distress damages as a result of Lafayette Insurance Company’s misrepresentation of pertinent facts or insurance policy provisions relating to any coverages at issue and/or failure to pay the amount due on Mr. and Mrs. Wegener’s homeowner’s claim within sixty days after it received satisfactory proof of loss?
ANSWER: YES_NO/
lifilf you answered “YES” to question 9, please proceed to question 10.If you answered “NO” to question 9, then skip the remaining questions, date and sign this form, and return to the courtroom
10. What amount of mental anguish and emotional distress damages do you find Mr. and Mrs. Wegener suffered as a result of Lafayette Insurance Company’s misrepresentation of pertinent facts or insurance policy provisions relating to any coverages at issue and/or failure to pay the amount due on Mr. and Mrs. Wegener’s homeowner’s claim within sixty days after it received satisfactory proof of loss?
Hildreth Wegener, III $_
Robin Wegener $_
Total (add Mr. and Mrs. $_
Wegener’s damages)
Please proceed to question 11.
11. What is the amount of penalty, if any, you award to Mr. and Mrs. Weg-ener for Lafayette Insurance Company’s misrepresentation of pertinent facts or insurance policy provisions relating to any coverages at issue and/or failure to pay the amount due on Mr. and Mrs. Wegener’s homeowner’s claim within sixty days after it received satisfactory proof of loss? (This amount may be up to two times the amount of damages determined in question 10, or $5,000, whichever is greater.)
Penalty: $_
Please sign and date the verdict form and return to the courtroom.
*1232 Lafayette relies on the responses to support its argument that the jury chose not to award penalties to the Wegeners. However, because of errors in the structure of the Jury Interrogatories, the jury was never given the opportunity to consider an award for penalties.
Interrogatory 9 asks whether the jury finds that the Wegeners suffered mental anguish and emotional distress damages. If the jury answers “YES,” the jury is then instructed to proceed to Interrogatory 10 relative to the amount of such damages, and then instructed to proceed to Interrogatory 11, relative to penalties. However, if the Injury answers “NO,” as it did in this case, the jury is instructed to skip Interrogatories 10 and 11, date and sign the form, and return to the courtroom. Thus, by finding that the Wegeners did not suffer mental anguish and emotional distress damages, the jury was not allowed to consider whether the Wegeners were nonetheless entitled to penalties due to Lafayette’s violation of La. R.S. 22:1220.
In Sultana Coloration v. Jewelers Mutual Ins. Co., 2003-0360 (La.12/3/03), 860 So.2d 1112, this Court considered whether actual damages must be proven before penalties may be assessed under La. R.S. 22:1220. We found there was no such requirement, noting La. R.S. 22:1220(C) recognized that the trial court may award penalties in addition to any general or special damages. We quoted with approval the reasoning set forth in Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 93-1611 (La.App. 3 Cir. 9/21/94), 643 So.2d 242, 244:
Penalties are imposed to discourage certain types of conduct by an insurer. The language in Section 1220(C) does not expressly require that a claimant suffer damages before recovering penalties. Moreover, if this requirement was so, the statute’s purpose more often would be thwarted. Claimants may decide not to file claims against insurers if the disputed amount or the damages are not substantial. As an end result, the misconduct which the legislature obviously intended to curb or deter would thrive. Thus, we find if an insurer commits any one of the acts enumerated in Section 1220(B), penalties may be imposed without a showing of damages.
Sultana, 860 So.2d at 1118. We found this interpretation of the statute comported with the “principle that an insurer’s duty of fair dealing emanates from the contractual and fiduciary relationship between the insured and insurer.” Id.
Thus, because penalties are permissive pursuant to La. R.S. 22:1220 even if no damages have been awarded as a result of the breach, the structure of the Jury Interrogatories in this case resulted in legal error.[11]
|18We must now determine whether these legal errors are sufficient to vacate the jury’s verdict. This Court has recognized that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Adams v. Rhodia, Inc. 2007-2110 (La.5/21/08), 983 So.2d 798, 804; Nicholas v. Allstate Insurance Company, 1999-2522 (La.8/31/00), 765 So.2d 1017, 1023. How *1233 ever, we have also recognized when a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. Adams, 983 So.2d at 804; Nicholas, 765 So.2d at 1023. This Court has further explained:
In the assessment of an alleged erroneous jury instruction, it is the duty of the reviewing court to assess such impropriety in light of the entire jury charge to determine if they adequately provide the correct principles of law as applied to the issued framed in the pleadings and evidence and whether they adequately guided the jury in its deliberation. Ultimately, the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice. (Internal citations removed).

Id.

In this case, the jury was unable to properly consider and determine whether the Wegeners suffered mental anguish damages because the Jury Instruction required the jury to find a fact beyond what the law requires before awarding such damages. Moreover, the erroneous law given in the Jury Instruction was reiterated to the jury in the closing argument given by Lafayette’s attorney. He stated to the jury: “The judge will instruct you to—in order to recover for mental anguish there must be an intent to aggrieve the plaintiffs. In order to recover for mental anguish, there must be evidence of the breach by the insurer and the intent to aggrieve the plaintiffs.” The jury was also unable to properly consider and determine whether the Wegeners were | ^entitled to penalties under La. R.S. 22:1220 because the structure of the Jury Interrogatories forced the jury to skip this issue in its deliberations. Thus, we find the error contained in the Jury Instruction regarding mental anguish damages, and the erroneous structure of the Jury Interrogatories necessarily misled the jury to the extent that it was prevented from dispensing justice. For this reason, the jury’s verdict cannot stand.
Typically where such legal errors have interdicted the fact finding process, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record. Landry v. Bellanger, 2002-1443 (La.5/20/03), 851 So.2d 943, 954; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980). However, we have also recognized that de novo review is not the best course of action in every case. Ragas, 388 So.2d at 708. This Court explained in Ragas:
This is not to say, and Gonzales[12] should not be read to require, that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial.
Ragas, 388 So.2d at 708.[13]
The authority for an appellate court to remand a case to the trial court for | gnproper consideration, where it is nec *1234 essary to reach a just decision and to prevent a miscarriage of justice, is conferred by La. C.C.P. art. 2164.[14] Whether a particular case should be remanded is a matter which is vested largely within the court’s discretion and depends upon the circumstances of the case. See Alex v. Rayne Concrete Service, 2005-1457 (La.1/26/07), 951 So.2d 138, 155.
After considering this standard, we conclude that under the specific facts and circumstances of this case, and the particular legal errors involved, a remand of the case for a new trial is dictated. The issues affected by the legal errors are damages and penalties under La. R.S. 22:1220, primary components of the Weg-eners’ case. Whether the Wegeners suffered mental distress as a result of Lafayette’s adjustment of their insurance claim, and whether the Wegeners are entitled to penalties due to Lafayette’s breach of its duties under this statute are both issues which are affected greatly by the credibility of the plaintiffs and the claims personnel from Lafayette. We find these issues necessarily require the fact finder to examine first-hand the witnesses’ demeanor and testimony. We cannot, by examination of the cold record alone, properly determine the issues involved. Thus, we are convinced that the interest of justice would be best served by remanding this case for a new trial.
Because we are remanding this matter for a new trial, we also address Lafayette’s argument that the trial court improperly excluded evidence of the Wegeners’ flood insurance claim and receipt of flood insurance policy limits. Prior to trial, Lafayette filed a Motion for Partial Summary Judgment Regarding Offset of Plaintiffs’ Flood Policy Recovery. Lafayette sought a ruling limiting plaintiffs’ | ¡^recovery under the Lafayette policy to any uncompensated losses covered by their homeowner’s policy which, when combined with their flood insurance proceeds, did not exceed the value of their property. The trial court denied Lafayette’s motion without written reasons. When the trial began, the parties sought clarification from the trial court regarding whether evidence of the Wegen-ers’ flood claim and evidence of payments by State Farm under the Wegeners’ flood policy could be introduced at trial, separate from the issue of whether Lafayette was entitled to a credit or offset of the amount of Plaintiffs’ recovery under their flood policy. The trial court stated that such evidence would not be allowed. The court of appeal found no error in the trial court’s ruling. As stated earlier in this opinion, the court relied on Urrate, supra, to hold that the Wegeners’ receipt of payments under their flood insurance policy was not relevant.
Lafayette argues that the trial court’s ruling prevented it from presenting highly probative evidence bearing directly on the issues of causation, apportionment of damages, and the application of the anti-concurrent causation provision in the homeowner’s policy exclusion. Lafayette also *1235 argues that the exclusion of the evidence prejudiced its ability to fully defend the bad faith claim, which was premised on the allegation that Lafayette had no valid basis to contend that flood was responsible for the damages and the Wegeners’ additional living expenses claims.
The Wegeners argue that the trial court properly excluded evidence of their receipt of flood insurance proceeds. Citing to Ur-rate, supra, the Wegeners assert that because flood and wind policies are complimentary and do not cover the same types of losses, a double coverage situation does not exist. The only possible relevance of this evidence is whether they were fully compensated for their damages by their flood insurer, and thus lost their right to assert a claim against Lafayette. Here, the Wegeners’ actual loss is the cost to rebuild their home, which their contractor | ^estimated at $434,800. Thus, even subtracting the $198,900 the Wegeners received from their flood insurer for the dwelling from the $434,800, they still have uncompensated losses of $235,900-$6,900 more than the $229,000 Lafayette policy limits. Moreover, the Wegeners argue that Lafayette cannot show that it was prejudiced by the court’s ruling.
We note that a trial court’s determinations regarding what evidence is admissible for the trier of fact to consider will not be overturned absent clear error. Folse v. Folse, 1998-1976 (La.6/29/99), 738 So.2d 1040, 1046. However, we agree with Lafayette that the evidence of the Wegen-ers flood insurance claim and payments was improperly excluded. Thus, the jury was deprived of relevant evidence by which it could fairly assess the credibility of the plaintiffs’ claims and make determinations regarding the extent to which plaintiffs had already been compensated for their losses.
It is clear that the Wegeners are entitled to collect under their homeowner’s policy for wind damage and to collect under their flood policy for flood damage. “[W]hile an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained in indemnified.” Cole v. Celotex, 599 So.2d 1058, 1080 (La.1992). It is equally clear that the Wegeners are not entitled to double recovery for the same elements of damages. See Albert v. Farm Bureau Ins. Co., 2005-2496 (La.10/17/06), 940 So.2d 620, 622 (citing Gagnard v. Baldridge, 612 So.2d 732, 736 (La.1993)). Evidence of flood insurance payments is relevant to the issue of what uncompensated losses remained. Without the benefit of evidence relative to the Wegeners’ flood insurance claim, the jury is essentially required to award damages to the Wegeners in a vacuum, without having the ability to determine whether such an award is double recovery.
At trial, the Wegeners argued that their house was a total loss as a result of Hurricane Katrina, and specifically argued that their house was rendered structurally | ^.unsound and had to be demolished due to wind damage. The Wegeners submitted evidence that the cost to rebuild the home is $434,800. Based on this amount, the Wegeners argue that even if the jury awarded the full amount of Lafayette’s policy limits, they would still have uncompensated losses. However, Lafayette introduced evidence at trial showing a rebuilding cost in the range of $282,000— $304,000. Assuming the jury finds the house a total loss at the new trial, the jury may well decide the cost to rebuild is the lower cost range submitted by Lafayette. Under this scenario, plaintiffs would not be entitled to policy limits under both insurance policies, and the jury should be entitled to know what amounts were already paid under the flood insurance policy.
We also note that the Wegeners submitted a list of damaged contents claiming *1236 damages totaling $141,818.91. However, Mrs. Wegener testified she did not attempt to separate what was damaged by wind and what was damaged by flooding. Mrs. Wegener also admitted that most of the items submitted on the list were located downstairs in the home, where the flooding occurred. The proffered evidence shows that State Farm estimated damages to contents exceeded the policy limits of $27,000. Because the Wegeners cannot be compensated for contents losses that were already paid by State Farm, the jury should be allowed to consider that the Wegeners were paid $27,000 for contents due to flood damage.
Thus, because plaintiffs are not entitled to recover more than the value of the property, we find evidence of payments to Plaintiffs for flood loss to be relevant and admissible.
CONCLUSION
While we are reluctant at any time to set aside a jury’s verdict, given the errors in this case we see no other appropriate remedy. The errors in the Jury Instructions and Jury Interrogatories precluded the jury from reaching a verdict based on the law 124and facts. Considering these errors, as well as the erroneous exclusion of evidence, we vacate the jury’s verdict and judgments of the lower courts, and remand the matter to the trial court for a new trial.[15]
DECREE
VACATED AND REMANDED FOR NEW TRIAL.
VICTORY, J., dissenting in part and concurring in part.
GUIDRY, J., concurs.

. These statutes were renumbered pursuant to La. Acts 2008, No. 413 to La. R.S. 22:1892 and La. R.S. 22:1973, respectively. For clarity, we refer to the previous statute numbers in this opinion.

. State Farm was not a party to this lawsuit. The trial court excluded evidence of the Weg-eners' flood insurance claim and payments. Lafayette proffered the evidence, thus it is included in the record.

. La. R.S. 22:1220 provided, in pertinent part:
An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
[[Image here]]
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
[[Image here]]
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

.La. R.S. 22:658 provided, in pertinent part:
(A)(1) All insurers issuing any type of contract, other than those specified in La. R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after *1225 receipt of satisfactory proofs of loss from the insured or any party in interest.
[[Image here]]
(B)(1) Failure to make such payment within thirty days after receipt of such satisfactory proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

. Wegener v. Lafayette Ins. Co., 2009-0072 (La.App. 4 Cir. 3/10/10), 34 So.3d 932.

. Wegener v. Lafayette Ins. Co., 2010-0810 (La.6/25/10), 38 So.3d 358; Wegener v. Lafayette Ins. Co., 2010-0811 (La.6/25/10), 38 So.3d 359.

. La. C.C.P. art. 1811 provides for the JNOV procedure. As outlined by this Court in Joseph v. Broussard Rice Mill, Inc., 00-0628, (La. 10/30/00), 772 So.2d 94, 99: "JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact."

. La. C.C. art. 1998 provides:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuni-ary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

. The concurrence in Lewis references Article 1998, noting the jury was not charged under Article 1998 to determine whether the insurer intended to aggrieve the insured, and the record did not support such a claim.

. We realize that the Plaintiffs apparently did not object to the Jury Interrogatories, nor was this issue raised on. appeal. However, this Court has previously noted that where the jury, instructions or interrogatories contain a "plain and fundamental” error, the contemporaneous objection requirement is relaxed and appellate review is not prohibited. Berg v. Zummo, 2000-1699 (La.4/25/01), 786 So.2d 708, 716 n. 5 (citing Trans-Globdl Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443, 448 (La.1991)). We find the Interrogatories essentially misstated the law and thus contained a "plain and fundamental” error which has led us to relax the contemporaneous objection requirement and review the issue on appeal.

. An appellate court has the right to consider an issue even though there was no assignment of error in that regard. See La. C.C.P. art. 2164, comment (a) ("an appellate court [has] complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.”); Georgia Gulf Corp. v. Board of Ethics, 96-1907 (La.5/9/97), 694 So.2d 173, 176; Safeway Insurance Co. of Louisiana v. State Farm Mut. Auto. Ins. Co., 86,853 (La.App. 2 Cir. 3/5/03), 839 So.2d 1022, 1027; Wheeler v. Kelley, 28,379 (La.App. 2 Cir. 11/7/95), 663 So.2d 559, 561, writ denied, 95-2721, 664 So.2d 404 (La.1995).

. Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163 (1975).

. See also, Watson v. Bulloch, 2002-2144 (La.App. 4 Cir. 2/18/04), 868.So.2d 825, 829 (based on the unique circumstances of the case, the court found "fairness dictates that *1234 the parties should have the opportunity to retry this case....”); Hickman v. Albertson's, Inc., 598 So.2d 1128 (La.App. 2 Cir.1992) ("When the record presents substantial conflicts in testimony and numerous credibility calls, the interest of justice may best be served by remanding the case for a new trial.”); McCauley v. LaFleur, 205 So.2d 458 (La.App. 3 Cir.1967)("Since the trial judge has not had an opportunity to consider the credibility of the witnesses ... we think the ends of justice require that the case be remanded to the trial judge....”)

. La. C.C.P. art. 2164 provides; The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

. Because we remand for a new trial, we pretermit consideration of all other issues raised by the parties.